George A. RUCKLE and Ruckle Sales, Inc., individually and on behalf of all stockholders of Roto American Corporation, Plaintiffs-Appellants,

v.

ROTO AMERICAN CORPORATION, Frank L. Walton and Anthony J. Caputo, Defendants-Appellees,

and

J. Henry Brezinski, Richard H. Schnoor, Alfred Gans and John Calasibetta, Defendants.

No. 275, Docket 29320.

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1964.

Decided Dec. 4, 1964.

Paul Windels, Jr., New York City, (Windels, Merritt & Ingraham, New York City, on the brief), for plaintiffs-appellants.

Milton S. Gould, New York City (Shea, Gallop, Climenko & Gould, New York City, on the brief), for defendants-appellees.

Before LUMBARD, Chief Judge, and MEDINA and MARSHALL, Circuit Judges.

MEDINA, Circuit Judge.

The complaint in this action for injunctive relief to prevent alleged violations of the provisions of the Securities Exchange Act of 1934, the details of which will appear shortly, was dismissed by Judge Cooper, who also rejected as moot an application for a temporary restraining order. Plaintiffs served a notice of appeal on November 17, 1964 and the matter first came before us on a motion for injunctive relief pending the disposition of the appeal. As the circumstances of the case required prompt action, and with the consent and cooperation of the parties, we set the argument of the motion and of the appeal for the afternoon of November 18, 1964, and after oral argument and the submission of the same briefs as had been before Judge Cooper, we reserved decision. Within a few days several orders were made by us granting certain temporary injunctive relief. As we hold that the District Court erred in holding it had no subject matter jurisdiction, we reverse the order dismissing the complaint, remand the case for a prompt and expeditious trial of the issues, and continue the preliminary injunctive orders heretofore

made by us until the further orders of the District Court.

The appeal presents important questions concerning the power of federal courts to adjudicate pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa,[1] claims involving possible breaches by corporate directors of their fiduciary responsibilities. For the reasons hereinafter stated, we hold that federal courts have jurisdiction over actions in which the complaint alleges that a corporation has been or may be defrauded into issuing or selling securities through the failure or refusal of some of its directors fully to disclose to the remaining directors material facts concerning the transactions or the financial condition of the corporation.

A derivative action was instituted on behalf of defendant Roto American Corporation on September 28, 1964. According to the complaint, plaintiff-appellant George A. Ruckle is a director of Roto American and owner of all but one of the 53,000 shares of plaintiff Ruckle Sales, Inc., which owns more than 77,000 of the 437,469 issued and outstanding shares of Roto American. The complaint also alleges that plaintiff Ruckle represents more than 50% of the stock entitled to vote at the 1964 annual meeting of Roto American shareholders. The defendants,

in addition to Roto American, are six of its directors, who are also its president, four vice presidents, and treasurer.

The gist of the complaint is that the defendant directors sought to perpetuate their control of Roto American, first by postponing the annual stockholders' meeting despite plaintiff Ruckle's protests,[2] and, second, by having the board of directors approve the issuance of approximately 75,000 Roto American treasury shares, which were to be resold to defendant Walton, Roto American's president, or voted as he directed. The fraudulent nature of the defendant directors' actions in approving the issuance of the 75,000 shares is alleged to derive from their withholding from the board the latest financial statements for the fiscal year ending May 31, 1964; arbitrarily ascribing a value of $3.00 per share to Roto American's stock; and approving several transactions involving the stock without disclosing the pertinent facts of these transactions to the entire board.

■ The basis for federal injunctive relief to prevent the consummation of these transactions and the issuance of the treasury shares was alleged to be Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[3] and

---

1. Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa provides in pertinent part:

"The district courts of the United States * * * have exclusive jurisdiction of violations of this title or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or the rules and regulations thereunder * * *."

2. In an affidavit filed on the same day as the complaint and accompanying an application for an order to show cause, plaintiff Ruckle asserts that when he inquired of Roto American's president about the delay in calling the shareholders' meeting, he was told that the postponement was caused by the absence of recent financial statements. Subsequently, according to the affidavit, a letter was sent to each shareholder stating that the annual report would be ready in the near

future. The affidavit recites Ruckle's belief that the excuse was a sham and that the report had been prepared.

3. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

*     *     *     *     *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10B–5, 17 CFR, Section 240.10b–5,[4] promulgated thereunder by the Securities Exchange Commission. An additional cause of action under New York law was alleged on the theory of pendent jurisdiction. Upon motion by the defendants Judge Cooper, noting the absence of diversity of citizenship, dismissed the federal claim for lack of subject matter jurisdiction, relying primarily on Birnbaum v. Newport Steel Corp., 2 Cir., 1952, 193 F.2d 461, cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, and O'Neill v. Maytag, S.D. N.Y., 1964, 230 F.Supp. 235, appeal pending No. 29008. The federal claim being thus disposed of, Judge Cooper also dismissed the cause of action under New York law, following the sound principle that pendent jurisdiction over a claim under state law requiring a plenary trial on the merits should not be exerted when the federal claim is dismissed prior to trial.[5] It is our view, however, that under the circumstances alleged federal jurisdiction existed with respect to the claim under the Securities Exchange Act.

In essence, the appeal raises two somewhat interrelated issues:

1. Is the issuance by a corporation of its own stock a "sale" within Section 10 (b) of the Securities Exchange Act of 1934 and Rule 10B–5 promulgated by the SEC?

2. Does the failure or refusal of a majority of a board of directors to disclose to the remaining directors information pertinent to a proposed stock issuance constitute a "fraud" upon the corporation within the meaning of the relevant statute and rule?

We answer both questions in the affirmative.

I

As a matter of authority and principle, the issuance by a corporation of its own shares is a "sale" to which the anti-fraud policy expressed in the federal securities laws extends. Hooper v. Mountain States Securities Corp., 5 Cir., 1960, 282 F.2d 195, 200–203, cert. denied, 1961, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed. 2d 693; Pettit v. American Stock Exchange, S.D.N.Y., 1963, 217 F.Supp. 21; see McClure v. Borne Chemical Co., 3 Cir., 1961, 292 F.2d 824 (by implication), cert. denied, 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339. We agree with the statement by Judge Brown in the Hooper case, supra, 282 F.2d at 203, that:

"Considering the purpose of this legislation, it would be unrealistic to say that a corporation having the capacity to acquire $700,000 worth of assets for its 700,000 shares of stock has suffered no loss if what it gave up was $700,000 but what it got was zero. If—as we very much doubt—accountants would support any such contention as a consequence of the esoteric mysteries of the double entry system, Liston Zander Credit Co. v. United States, 5 Cir., 1960, 276 F. 2d 417, 422, the law with its eye on reality would have to part company with such purists."

Nor are Birnbaum v. Newport Steel Corp., 2 Cir., 1952, 193 F.2d 461, cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356, or Howard v. Furst, 2 Cir.,

---

4. Rule 10B–5, 17 CFR, Section 240.10b–5, provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

"(1) to employ any device, scheme, or artifice to defraud,

"(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

5. See Hart & Wechsler, The Federal Courts and the Federal System, 797–808 (1953). See generally Note, 62 Colum.L.Rev. 1018 (1962).

1956, 238 F.2d 790, cert. denied, 1957, 353 U.S. 937, 77 S.Ct. 814, 1 L.Ed.2d 759, contrary to this proposition.

Birnbaum was a derivative suit on behalf of one corporation against a person who controlled that corporation until he sold his shares to another corporation which had not been deceived. The court limited the broad language of Rule 10B–5 to situations in which either the purchaser or the seller of the stock is defrauded, situations not presented by the facts of Birnbaum. The court concluded, 193 F.2d at 464:

> "When Congress intended to protect the stockholders of a corporation against a breach of fiduciary duty by corporate insiders, it left no doubt as to its meaning. Thus Section 16 (b) of the Act of 1934, 15 U.S.C. § 78p(b), expressly gave the corporate issuer or its stockholders a right of action against corporate insiders using their position to profit in the sale or exchange of corporate securities. The absence of a similar provision in Section 10(b) strengthens the conclusion that that section was directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X-10B–5 extended protection only to the defrauded purchaser or seller."

Howard v. Furst, supra, held that Section 14(a) of the Securities Exchange Act of 1934, governing proxy solicitations, created no civil remedy enforceable by the corporation whose shareholders were solicited. The court cited Birnbaum in noting, 238 F.2d at 793:

> "Significantly, where it was intended to create a right of action in favor of the issuer corporation, the statute makes express provision therefor, as in the case of Section 16 (b)."

But neither Birnbaum nor Howard presented a situation in which suit was instituted on behalf of a defrauded corporation. It is perfectly obvious that in both cases the fraudulent statements and omissions were directed at shareholders and not at the corporations. In the circumstances of those cases, it therefore seems appropriate to hold that, absent statutory language to the contrary, a corporation that has not been the victim of fraud cannot sue.[6]

■ There is, however, no support in either of those opinions for the proposition that when a corporation is actually defrauded into issuing securities, a question to which we will presently turn our attention, it still cannot sue under Section 10(b) or Rule 10B–5. Barring suit by a corporation defrauded under those circumstances would, as a legal and practical matter, destroy any remedy against the perpetrator of the fraud. Suits by individual shareholders would either run afoul of privity requirements, cf. Joseph v. Farnsworth Radio & Television Corp., S.D.N.Y., 1951, 99 F.Supp. 701, affirmed, 2 Cir., 1952, 198 F.2d 883, or result in smaller recoveries based on loss to individual investments, which would also be difficult to compute.

Moreover, Birnbaum indicated that the dominant purpose of the promulgation of Rule 10B–5 was to extend federal protection to sellers as well as purchasers. It cannot be that the federal regulatory scheme is promoted by allowing a private person to sue, though the fraud complained of may relate not to the stock he sells but to the consideration he receives, see Errion v. Connell, 9 Cir., 1956, 236 F.2d 447, but not a defrauded corporation. In the latter case, it is far more likely that, as a result of the fraud perpetrated upon the issuing corporation, overvalued stock may reach the market. Of course, it was precisely the fear that such securities would be publicly distributed which prompted Congress to enact the federal securities laws.

---

6. And see J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423.

## II

We come then to the question whether it is possible within the meaning of Section 10(b) and Rule 10B–5 for a corporation to be defrauded by a majority of its directors. We note at the outset that in other contexts, such as embezzlement and conflict of interest, a majority or even the entire board of directors may be held to have defrauded their corporation. When it is practical as well as just to do so, courts have experienced no difficulty in rejecting such cliches as the directors constitute the corporation and a corporation, like any other person, cannot defraud itself.

If, in this case, the board defrauded the corporation into issuing shares either to its members or others, we can think of no reason to say that redress under Rule 10B–5 is precluded, though it would have been available had anyone else committed the fraud. There can be no more effective way to emasculate the policies of the federal securities laws than to deny relief solely because a fraud was committed by a director rather than by an outsider. Denial of relief on this basis would surely undercut the congressional determination to prevent the public distribution of worthless securities.

In this case, it may be that the stock was not intended ultimately to find its way into the hands of the defendant directors or their associates. It may be that there was no concealment of material.facts at the board of directors meeting at which the transactions were approved. But, these are matters which, of course, go to the merits of the case and not to the jurisdiction of the court.

We direct the issuance of our mandate forthwith.

Reversed.

MARSHALL, Circuit Judge (concurring):

I concur in the result.