Hyman WEITZEN, Plaintiff,
and
Nathan Epstein, under a Power of Trust
for the benefit of Allen Lee Epstein,
Plaintiff-Intervenor,

v.

William KEARNS et al., Defendants.

No. 66 Civ. 2460.

United States District Court
S. D. New York.

July 20, 1967.

617

Kaufman, Taylor, Kimmel & Miller,
New York City, for plaintiff and plain-
tiff-intervenor; Stanley L. Kaufman,

Shephard S. Miller, New York City, of counsel.

Holtzmann, Wise & Shepard, New York City, for defendant Solitron Devices, Inc.

Windels, Merritt & Ingraham, New York City, for defendant directors.

John M. Schwartz, New York City, for defendants Paul Windels and Hilda Alperson, as trustee for the children of Benjamin Friedman.

## OPINION

BONSAL, District Judge.

Defendants move for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure dismissing the complaint in the above entitled action on the ground that this Court has no jurisdiction over the subject matter and the complaint fails to state a claim upon which relief can be granted. In the alternative, defendants move for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting summary judgment against the plaintiffs. Since the parties have submitted "matters outside the pleadings" both in support of and in opposition to the defendants' motion, the motion will be treated as one for summary judgment. (Rule 12(c), F.R.Civ. P.)

It appears that on December 15, 1965, Solitron Devices, Inc. (Solitron) offered $4,500,000 face amount of its 5% convertible debentures, convertible into shares of common stock of Solitron at a ratio of $105 per share pursuant to a registration statement filed with the Securities and Exchange Commission and effective on that date. It was stated in the prospectus that the debentures would first be offered solely to officers and employees of Solitron, then after five days, to other persons who had rendered particular assistance to Solitron or services to it in the past, and then after ten days, to any person on a "first come, first served" basis. According to the defendants, all the debentures were subscribed to within the ten-day period by offerees within the first two categories and no debentures were offered or sold to others. Certain of the subscribers allocated their subscriptions in part to members of their family or to family trusts.

Plaintiffs sue on behalf of themselves, representatively on behalf of all other Solitron shareholders similarly situated, and derivatively on behalf of Solitron, alleging that at the time the offer of convertible debentures was made the officers and directors of Solitron—defendants Benjamin Friedman, William Kearns, Raj Misra, and Paul Windels, Jr. —were in possession of material inside information concerning the affairs and prospects of Solitron, including knowledge that:

1. Solitron's net earnings for the third quarter and nine month period ending November 30, 1965 were substantially in excess of earnings for similar periods of the previous fiscal year;

2. Solitron's net income for the year ending February 28, 1966 would be almost double that of the previous year;

3. On February 28, 1966 Solitron would declare a 100% stock dividend; and

4. On February 28, 1966, Solitron would increase the cash dividend payable on its common stock.

Plaintiffs assert that had this inside information been disclosed to the public on or prior to the date of the offer, the fair market value of the convertible debentures with the $105 per share conversion ratio would have been approximately $7,000,000 or $2,500,000 more than Solitron received pursuant to the offer. Plaintiffs contend that by causing Solitron to issue the convertible debentures to themselves and to members of their families, the director defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act) and Rule 10b–5 promulgated pursuant thereto. Plaintiffs further contend that the

director defendants violated Section 10(b) and Rule 10b–6 by purchasing the Solitron debentures while participating in their distribution. Plaintiffs demand judgment that the director defendants be enjoined from exercising their conversion rights under the debentures and that their purchases be rescinded or that the director defendants be required to pay to Solitron the difference between the fair market value of the debentures at the time of the offering and the amount paid by them to Solitron.*

*Claim under Rule 10b–5:*

 If directors cause a publicly owned corporation to issue its securities to them for a consideration which in the light of material undisclosed information known to them is inadequate, a stockholder may sue on behalf of the corporation for damages or other appropriate relief under Section 10(b). See, Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967); S. E. C. v. Texas Gulf Sulphur Co., 258 F.Supp. 262 (S.D.N.Y. 1966); Simon v. New Haven Board & Carton Co., 250 F.Supp. 297 (D.Conn. 1966); New Park Mining Co. v. Cranmer, 225 F.Supp. 261 (S.D.N.Y.1963). A corporation which issues its shares is a "seller" and a convertible debenture is a "security" as those terms are used in Section 10(b). Section 3(a) (10) of the 1934 Act, 15 U.S.C. § 78c(a) (10); Ruckle v. Roto American Corp., 339 F. 2d 24 (2d Cir. 1964); Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960); Heli-Coil Corp. v. Webster, 222 F.Supp. 831 (D.N.J.1963), modified on other grounds, 352 F.2d 156 (3rd Cir. 1965). Therefore, the allegations of the complaint that the director defendants caused Solitron to issue to them and members of their families debentures convertible into shares of common stock at a price of $105 per share at a time when the directors knew that the fair value of the Solitron common stock was greatly in excess of the conversion price, state, on their face at least, a cause of action under Section 10(b) and Rule 10b–5.

In moving for summary judgment, the defendants contend that they have not violated Section 10(b) and Rule 10b–5 for the following reasons: (1) the allegedly undisclosed inside information was not material; (2) in any event, the information could not have been disclosed; and (3) the plaintiffs have failed to allege facts amounting to a deception.

*Materiality:*

Defendants argue that to be material, information must represent a significant departure from the corporation's previous activity or financial condition, that it must be "essentially extraordinary in nature" and "reasonably certain to have a substantial effect on the market price of the security if disclosed." S. E. C. v. Texas Gulf Sulpher, supra, 258 F.Supp. at 280, quoting, Fleischer, "Securities Trading and Corporate Information Practices: The Implications of the Texas Gulf Sulphur Proceeding," 51 Va.L.Rev. 1271, 1289 (1965). In this context, defendants contend that all of the allegedly undisclosed earnings figures were fully consistent with the corporation's past earnings performances as disclosed in the prospectus accompanying the debenture offer. Moreover, the defendants contend that Solitron stock was a highly speculative electronics issue, the market price of which bore little or no relation to earnings.

 Plaintiffs argue, on the other hand, that past earnings trends are not

---

* Plaintiffs seek the same relief against the members of the director defendants' families and against approximately 700 Solitron employees who also purchased debentures pursuant to the offer on the theory that they either knowingly participated in the allegedly fraudulent scheme (Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673 (N.D.Ind.1966);

Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963)) or were "tippees." Ross v. Licht, 263 F.Supp. 395 (S.D.N.Y.1967); Cady, Roberts & Co., 40 S.E.C. 907 (1961). Plaintiffs have not served any of the employees of Solitron and indicated at argument that they do not intend to do so.

necessarily reliable indicators of future earnings and that information as to earnings has traditionally been regarded as material. For example, the New York Stock Exchange provides in its manual, The Corporate Director and The Investing Public (1962), p. 13, that "Corporate officials should wait until after the release of earnings * * * has appeared in the press before making a purchase or sale." Under normal circumstances, information as to earnings is the type of information "which in reasonable and objective contemplation might affect the value" of a corporation's securities. List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir. 1965), quoting, Kohler v. Kohler Co., 319 F.2d 634, 642, 7 A.L.R. 3d 486 (7th Cir. 1963).

The parties make numerous other arguments and counter-arguments on the issue of materiality, but the foregoing summary is sufficient to indicate the impossibility of deciding the issue on a motion for summary judgment. Determinations as to the materiality of information in fraud actions involve complex considerations of law and fact and are not "ordinarily well adapted to disposition on summary judgment procedure", Rogen v. Ilikon Corp., 361 F.2d 260, 265 (1st Cir. 1966), particularly in cases where the plaintiff has not yet had discovery. 1A Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1960), at p. 219; see, Subin v. Goldsmith, 224 F.2d 753 (2d Cir. 1955). On this motion, all inferences from the facts must be considered in the light most favorable to the plaintiffs and the court cannot conclude that the allegedly undisclosed information was not material. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Doff v. Brunswick Corp., 372 F.2d 801 (9th Cir. 1967); Dyer v. MacDougall, 201 F.2d 265 (2d Cir. 1952).

*Disclosure:*

Defendants contend that under Section 5(c) of the Securities Act of 1933 (the 1933 Act) and under the rules and regulations promulgated pursuant thereto, they could not publish earnings figures out of the ordinary course and they could not predict future earnings and dividends either in the registration statement or in a release to the public during the pendency of the debenture offer. However, if directors are prevented from disclosing material information for any reason, they should forego purchases in their corporation's securities during the period of nondisclosure. S. E. C. v. Texas Gulf Sulphur Co., supra, 258 F.Supp. at 279; Cady, Roberts & Co., 40 S.E.C. 907, 911 (1961). As stated in Oliver v. Oliver, 118 Ga. 362, 45 S.E. 232, 234 (1903):

> It might be that the director was in possession of information which his duty to the company required him to keep secret; and, if so, he must not disclose the fact even to the shareholder, for his obligation to the company overrides that to an individual holder of the stock. But if the fact so known to the director cannot be published, it does not follow that he may use it to his own advantage, and to the disadvantage of one whom he also represents. The very fact that he cannot disclose prevents him from dealing with one who does not know, and to whom material information cannot be made known.

*Deception:*

Defendants contend that since all Solitron's directors were allegedly aware of the undisclosed inside information, the corporation could not have been deceived. O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); Schoenbaum v. Firstbrook, CCH, Fed.Sec.L.Rep., ¶ 91,917 (S.D.N.Y. 1967). However, as stated in Ruckle v. Roto American Corp., supra, 339 F.2d at p. 29:

> We come then to the question whether it is possible within the meaning of Section 10(b) and Rule 10B–5 for a corporation to be defrauded by a majority of its directors. We note at the outset that in other contexts, such as embezzlement and conflict of interest, a majority or even the entire board of directors may be held to have defraud-

ed their corporation. When it is practical as well as just to do so, courts have experienced no difficulty in rejecting such clichés as the directors constitute the corporation and a corporation, like any other person, cannot defraud itself.

On the basis of *Ruckle,* the court in Heilbrunn v. Hanover Equities Corp., 259 F.Supp. 936, 938 (S.D.N.Y.1966) stated that, "it is clear that the corporation, as 'seller' of stock * * *, may be defrauded by all its directors, and is not barred from relief by the notion of imputed knowledge." Also, see, Globus v. Jaroff, 266 F.Supp. 524 (S.D.N.Y.1967); Dambitzer v. The First Republic Corp. of America, CCH, Fed.Sec.L.Rep., ¶ 91,445 (S.D.N.Y.1964).

Nor is *O'Neill* authority for a contrary position. In *O'Neill* the plaintiff sued derivatively on behalf of National Airlines, alleging that in an exchange of shares with Pan American World Airways the officers and directors of National caused National to pay a premium of $1,800,000 for its shares in order to eliminate the threat which these shares (constituting 21% of the total shares outstanding) posed to their control. No aspect of the transaction was concealed from the corporation or its shareholders and the market value of the National shares was readily ascertainable from New York Stock Exchange quotations. As the court stated, "There can be no serious claim of * * * withheld information or misstatement of material fact in this case." 339 F.2d, at 767.

█ Therefore, the only alleged nondisclosure in *O'Neill* related to the motive which prompted the transaction, the desire of National's officers and directors to enhance their control position. In this context, the court stated that:

Between principal and agent and among corporate officers, directors and shareholders, state law has created duties which exist independently of the sale of stock. * * * The question posed by this case is whether it is sufficient for an action under Rule 10b–5 to allege a breach of one of these general fiduciary duties where the breach does not involve deception. We think that it is not: At least where the duty allegedly breached is only the general duty existing among corporate officers, directors and shareholders, no cause of action is stated under Rule 10b–5 unless there is an allegation of facts amounting to deception. [339 F.2d, at 767–768]

The court in *O'Neill* did not discuss the question as to whether all of a corporation's directors might defraud the corporation and the court expressly approved the result in Ruckle v. Roto American Corp., supra. 339 F.2d, at 768. Where plaintiffs allege that directors failed to disclose material information relative to a transaction in corporate securities and used such information for their personal benefit, their complaint does not fail to state a claim under Section 10(b) and Rule 10b–5 merely because all of the directors of the corporation knew of or participated in the alleged fraud. See, Fleischer, " 'Federal Corporation Law:' An Assessment," 78 Harv.L.Rev. 1146, 1160–67 (1965).

Even if *O'Neill* is authority for the proposition that a corporation may not be defrauded by all of its directors (see, Schoenbaum v. Firstbrook, supra), the validity of *O'Neill* and of Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), on which it relied, appears to be questioned by two recent decisions of the Court of Appeals of this Circuit: Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967). While recognizing that the language of Section 10(b) and Rule 10b–5 was "somewhat loosely drawn," the court concluded in *Birnbaum* that Section 10(b) was directed:

* * * solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs, and that Rule X–10B–5 extended protection only to the de-

frauded purchaser or seller. [193 F.2d, at 464]

Quoting *Birnbaum* with approval, the court in *O'Neill* added that Rule 10b–5 was not "a mandate to inquire into every allegation of breach of fiduciary duty respecting the issuance or sale of corporate securities." 339 F.2d, at 768.

However, in *Vine*, supra, the court, after holding that the plaintiff there had constructively sold securities, went on to state that:

> * * * the Commission advances the alternative argument that plaintiff need not even be a selling stockholder to sue under 10b–5, so long as the Rule has been violated and plaintiff's stock lost value as a result. The Commission claims in effect that prior decisions in this circuit, often cited for the rule that only a seller or purchaser may bring a Rule 10b–5 action, have been too broadly read and can be distinguished, see Leach, Transactions in Corporate Control, 104 U.Pa.L.Rev. 725, 832–835 (1956). In view of our disposition of this case, it is unnecessary to deal with this interesting contention. [374 F.2d at 636]

Also, see, A. T. Brod & Co., supra, 375 F.2d at 397, fn. 3.

In A. T. Brod & Co. the court characterized as "much too narrow" this court's construction that Section 10(b) was, in general terms, enacted to protect investors from fraud "usually associated with the sale or purchase of securities" and relating to the investment value of the securities sold or purchased. 375 F.2d, at 396. Relying "in the main, on the language of the applicable provisions", the court concluded that:

> We believe that § 10(b) and Rule 10b–5 prohibit *all* fraudulent schemes in connection with the purchase or sale of securities, whether the artifices employed involve a garden type variety of fraud, or present a unique form of deception. [375 F.2d, at 397]

Therefore, the purchaser-or-seller and the securities-fraud limitations placed on the application of Section 10(b) and Rule 10b–5 by the courts in *O'Neill* and *Birnbaum* have been seriously challenged, if not overruled. See, Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y.1967).

██ In any event, there are other reasons why the complaint states a cause of action under Section 10(b). The Supreme Court has postulated that the securities laws should be construed "not technically and restrictively, but flexibly to effectuate * * * [their] remedial purposes." S. E. C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 285, 11 L.Ed.2d 237 (1963). Plaintiffs assert, and the defendants do not deny, that many of the convertible debentures offered in December, 1965 have been converted into common stock of Solitron or have been sold in the market. As noted in Ruckle v. Roto American Corp., supra, 339 F.2d at p. 28, whenever a corporation is caused to issue securities for an inadequate consideration, there is danger of market dilution.

*Claim under Rule 10b–6:*

██ Plaintiffs contend that the director defendants violated Rule 10b–6 by purchasing convertible debentures while participating in the offer. Defendants do not deny the purchases or the participation, but contend that Rule 10b–6 was designed solely to protect purchasers of securities from market manipulation and is not available to the corporate issuer of securities on whose behalf a derivative action is maintained.

Rule 10b–6 provides in pertinent part that:

> It shall constitute a "manipulative or deceptive device or contrivance" as used in section 10b of the Act for any person, * * * (3) * * * who has agreed to participate or is participating in * * * [a particular distribution] to bid for or purchase for any account in which he has a beneficial interest, any security which is the subject of such distribution * * *.

In interpreting the rule, the court in S. E. C. v. Scott Taylor & Co., 183 F.Supp. 904, 907 (S.D.N.Y.1959) stated that:

> Manipulation was one of the basic evils with which Congress was concerned in enacting statutes to regulate the securities market. See Securities Exchange Act of 1934, Section 2(3). Manipulation was often accomplished by those about to sell securities or already engaged in selling securities bidding on the market for the same securities, thereby creating an unjustifiable impression of market activity which would facilitate the sale at artificially high prices. This was one of the practices which the Securities Exchange Act was designed to eradicate, and it is the practice which is covered by Rule X–10B–6.

Further evidence as to the purpose of Rule 10b–6 is found in other provisions of the rule itself which permit "stabilizing transactions not in violation of Rule 10b–7" and purchases "by an underwriter * * * 10 or more business days prior to the proposed commencement of such distribution * * *, if none of such purchases or bids are for the purpose of creating actual, or apparent, active trading in or raising the price of such security." Rule 10b–6(a) (8) and (11). Therefore, it is apparent that Rule 10b–6 was designed to protect a purchaser of a security in a distribution from abnormal market pressures on the distribution price created by the issuer's or underwriter's own trading.

Plaintiffs did not purchase any of the debentures offered by Solitron in December, 1965. Nor do the plaintiffs allege that defendants' purchases were intended to facilitate the sale of the debentures to others at "artificially high prices." On the contrary, plaintiffs contend that the defendants caused Solitron to issue the securities to themselves and to members of their families for an inadequate consideration. Therefore, plaintiffs have failed to state a claim under Rule 10b–6 either on behalf of themselves or derivatively on behalf of Solitron.

Accordingly, defendants' motion for summary judgment is denied as to plaintiffs' claims under Section 10(b) and Rule 10b–5 and is granted as to plaintiffs' claims under Section 10(b) and Rule 10b–6.

Settle order on notice.