**Albert HOFF and Karen L. Hoff, Plaintiffs,**

**v.**

**Gerald SPRAYREGEN et al., Defendants.**

**No. 69 Civ. 4717.**

United States District Court, S. D. New York.

Nov. 5, 1971.

Supplemental Memorandum Nov. 17, 1971.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for defendants Lawrence Hurwitz and Sprayregen & Co.

Baker, Nelson, Williams & Mitchell, New York City, for defendants Edward T. Chappell, Charles Erdman, Stephen D. Fuller and Charles Katz.

## MEMORANDUM

TENNEY, District Judge.

This is a motion pursuant to Rules 12(b) (1) and 12(b) (6) of the Federal Rules of Civil Procedure to dismiss the complaint herein for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted.

The action is a derivative one, brought by plaintiffs as stockholders on behalf of the nominal defendant, Technical Tape, Inc. (hereinafter referred to as "Tech Tape") and the movants are defendants Sprayregen & Co., Inc. (hereinafter referred to as "Sprayregen"), Gerald Sprayregen and Lawrence N. Hurwitz, who are joined by defendants Edward T. Chappell, Charles Erd-

man, Stephen Fuller and Charles Katz. The said defendants argue that the complaint should be dismissed because it does not state any federal claim and there is no subject matter jurisdiction over the action.

In support of such argument, defendants assert that rather than stating, as alleged, a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1971) and the Rules enacted thereunder, 17 C.F.R. § 240.10b–5 (hereinafter referred to as "Rule 10b–5"), the complaint sets forth at best a garden variety type claim for an alleged breach of corporate fiduciary duty.[1]

In brief,[2] the complaint alleges that the individual defendants dominated and controlled Tech Tape and caused Tech Tape to enter into certain agreements resulting in the issuance by Tech Tape of shares of its preferred stock to SMC Investment Corporation (hereinafter referred to as "SMC") and in connection therewith the payment of grossly excessive fees to Sprayregen (including the issuance of warrants for common stock of Tech Tape), all in violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder.

It is further alleged that plaintiffs, as contemporaneous shareholders, bring this derivative action in the right and for the benefit of Tech Tape, basing jurisdiction upon Section 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa, the principles of pendent jurisdiction and diversity of citizenship.

More particularly, it is alleged that defendants Sprayregen (an investment banking firm), Gerald Sprayregen and Hurwitz (both stockholders and Chairman of the Board and President of Sprayregen, respectively) were directors of Tech Tape at the time of the transactions complained of herein; that defendant Sprayregen purchased control of Tech Tape and at the time of the transactions complained of herein and continuing, dominated and controlled the Board of Directors of Tech Tape and dominated and controlled the business policies and decisions of Tech Tape by virtue of its ownership and control of Tech Tape stock and its domination and control of the Board of Directors of Tech Tape.

It is further alleged that while in the conflicting position of control, defendants Sprayregen, Gerald Sprayregen and

---

1. Section 10(b) provides:

    "Regulation of the Use of Manipulative and Deceptive Devices.

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

    . . .

    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

    Rule 10b–5 provides:

    "Employment of Manipulative and Deceptive Devices.

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

    (1) to employ any device, scheme or artifice to defraud,

    (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

2. The allegations of the complaint are detailed in a prior decision in this case sustaining plaintiffs' standing to maintain this derivative action. Hoff v. Sprayregan, 52 F.R.D. 243 (S.D.N.Y.1971).

Hurwitz caused Tech Tape to enter into an agreement with Sprayregen whereby Tech Tape agreed to pay Sprayregen fees (including the issuance of warrants to purchase 20,000 shares of Tech Tape below the then-market value) in the event that at any time in the future Sprayregen obtained financing from SMC for Tech Tape by private placement of Tech Tape notes or securities with SMC; that thereafter Sprayregen obtained such financing in the amount of $5,000,000 from SMC resulting in the issuance of $5,000,000 worth of preferred stock of Tech Tape to SMC;[3] that in connection with the issuance of said $5,000,000 of preferred shares to SMC, Tech Tape was obligated to pay Sprayregen fees in excess of $550,000 (consisting in part as the difference between the warrant and market price of 20,000 shares of common stock of Tech Tape) which amount was in excess of 11 per cent of the purchase price of the preferred stock issued, was substantially in excess of the customary fees paid for such services, and was so grossly excessive as to constitute a fraud upon Tech Tape in connection with the issuance of said securities.

Paragraph 16 alleges:

"The defendants other than Technical Tape singly and in concert have violated Section 10(b) of the Act and Rule 10b–5 promulgated thereunder in that by the use of the mails and instrumentalities of Interstate commerce and in connection with the sale of the aforesaid shares of Preferred Stock by Technical Tape to SMC and the sale of the aforesaid warrants by Technical Tape to Sprayregan & Co., said defendants employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make statements made in the light of circumstances under which they were made not misleading and engaged in acts, practices and a course of conduct which was intended to and did operate as a fraud upon Technical Tape."

Paragraph 17 alleges:

"As part of the aforesaid acts and transactions referred to in Paragraph 16 above, defendant Sprayregan & Co. and defendants Sprayregan & Hurwitz failed to disclose to other directors of Technical Tape that the compensation to be paid to Sprayregan & Co. pursuant to the aforementioned agreement between Technical Tape and Sprayregan & Co. was in excess of 11% of the purchase price of the notes or securities to be sold to SMC and was substantially in excess of the customary fees paid for the services to be rendered by Sprayregan & Co. to Technical Tape and was grossly in excess of the value of such services."

The consequences of the transactions and the resulting damage to Tech Tape are then alleged.

For the purposes of defendants' motion, the complaint's factual allegations must be accepted as true and the complaint may be dismissed only if it discloses lack of jurisdiction or insufficiency on its face. Arfons v. E. I. DuPont De Nemours & Co., 261 F.2d 434 (2d Cir. 1958); Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715, 717 (S.D.N.Y.1968). The allegations must be considered in the light most favorable to plaintiffs and the motion must be denied unless it is clear from the complaint that plaintiffs would not be entitled to the relief sought. A. T. Brod & Co. v. Perlow, 375 F.2d 393, 395 (2d Cir. 1967).

Although plaintiffs move pursuant both to Rules 12(b) (1) and 12(b) (6), it seems clear that lack of jurisdiction is

---

3. The fact that the transaction involved the purchase by SMC of $5,000,000 of notes of Tech Tape exchangable for preferred stock if authorized· by the stockholders of Tech Tape and the issuance of such preferred stock after such approval was obtained does not affect the result reached herein. Indeed, a trial of this action may show that the stockholders themselves, in addition to the directors, were misled in authorizing the issuance of the preferred stock.

not a wholly independent ground but rather depends upon the disposition of the other asserted grounds for dismissal, *i. e.,* failure to state a claim under Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder. If the complaint fails to state a claim under the Act, the Court may dismiss either upon that ground or for lack of jurisdiction. On the other hand, if a good claim is stated under the Act then the Court has jurisdiction over it and may not dismiss on either ground. Globus·Inc. v. Jaroff, 266 F.Supp. 524 (S. D.N.Y.1967).

The plaintiffs' position herein is, and the complaint in effect alleges, that defendants Sprayregen, Gerald Sprayregen and Hurwitz, while in control of Tech Tape and in a conflict of interest position, caused Tech Tape, a publicly-owned company, to issue its preferred stock to SMC for a wholly inadequate consideration. It is argued that while Tech Tape issued approximately 715,000 shares of its convertible preferred stock to SMC for a purchase price of $5,000,000, Tech Tape did not receive $5,000,000 for the stock sold but only 89 per cent of that amount since Sprayregen siphoned off in excess of 11 per cent of the purchase price in the form of a placement fee. On this basis, it is argued that the stock issued to SMC was in effect watered stock issued for an inadequate consideration. A further point is made that defendants failed to disclose to the other directors of Tech Tape that excessive compensation was to be paid to defendant Sprayregen in connection with the issuance of securities.

Defendants, in turn, base their argument in support of dismissal on the assertion that two unrelated agreements are involved, *i. e.,* the agreement between Tech Tape and Sprayregen, covering the placement fee payable to the latter, and the agreement between Tech Tape and SMC resulting in the sale of its preferred stock by Tech Tape to SMC. Or, considered in the context of Section 10(b) and Rule 10b–5, defendants contend that plaintiffs do not seek to set aside the purchase of the Tech Tape preferred stock by SMC (and accordingly the sale must have been proper) and that the "placement fee" agreement between Tech Tape and Sprayregen was not a fraud or deceit "in connection with the purchase or sale of any security" within the meaning of that Section and Rule, but merely a breach of corporate fiduciary duty.

■ That an agreement for payment of a broker's or finder's fee for the purchase or sale of securities is "in connection with the purchase and sale of any security" seems too clear for argument. SEC v. Great American Industries, Inc., 407 F.2d 453, 460 (2d Cir. 1968) (en banc), cert. denied, 395 U.S. 920, 89 S. Ct. 1770, 23 L.Ed.2d 237 (1969).

■■ In the present case, the agreement of May 28, 1969 between Tech Tape and Sprayregen clearly anticipated the subsequent agreement of sale between Tech Tape and SMC on June 6, 1969—indeed, the two documents can be construed as a tripartite agreement even though SMC may have been unaware of the fee agreement. The earlier agreement was contingent upon a sale to SMC and indeed it is reasonable, although not necessary, to assume that Sprayregen had already "found" the purchaser when the "placement fee" agreement was executed. These interrelated agreements, without further action by Tech Tape's board of directors, resulted in the delivery of warrants for 20,000 shares of Tech Tape common stock (below the then-market price) indirectly to directors of Tech Tape and the delivery of approximately 715,000 shares of preferred stock to SMC at a deceptive price. The issuance of the Tech Tape preferred stock to SMC was clearly a sale of such stock within the meaning of Section 10(b) and Rule 10b–5, and Tech Tape's stockholders are clearly entitled to bring a derivative action for damages to that corporation by reason of a violation of that Section and Rule. Schoenbaum v. Firstbrook, 405 F.2d 215, 119 (2nd Cir. 1968) (en banc) cert. denied, Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct.

1747, 23 L.Ed.2d 219 (1969); Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964). If material information was withheld from any member of the Board of Directors in connection with these transactions (and the complaint so alleges) then the issuance of the preferred stock to SMC may be held to be a fraud upon the corporation, and where a conflict of interest is involved (and the complaint so alleges) "a majority or even the entire board of directors may be held to have defrauded their corporation." Ruckle v. Roto American Corp., *supra* at 29. In the instant case, unlike Superintendent of Insurance of State of New York v. Bankers Life & Casualty Co., 430 F.2d 355 (2d Cir. 1970), cert. granted, 401 U.S. 973, 91 S.Ct. 1191, 28 L.Ed.2d 321 (1971), relied on by defendants, there is a danger that the securities would be improperly valued on reaching the public. Nor is this a case of corporate waste or improper diversion of the proceeds of sale, but one involving the very sufficiency of such proceeds. In the instant case it is alleged in effect that Tech Tape issued the preferred stock without full knowledge that excessive fees would be paid to Sprayregen and thus was deceived as to the adequacy of the consideration to be received by it for the issuance of said securities and in fact received inadequate consideration for such issuance.

Although copies of the relevant agreements were apparently not attached to the complaint and are not before the Court, plaintiffs assert in their memorandum of law submitted herein (and are not contradicted by defendants) that "under the agreement between Tech Tape and SMC, SMC could convert the Tech Tape Preferred Shares into Tech Tape common stock. It is expressly provided in the agreement that Tech Tape would register all securities it issued in connection with the financing. Ultimately, it is therefore very likely that stock issued for inadequate consideration would be distributed to the public" (Plaintiffs' memo. at 9). Furthermore,

this Court is not prepared to state that the issuance of warrants for Tech Tape common stock to Sprayregan as part of the placement fee did not constitute a "sale" for an inadequate consideration. Fidelis Corp. v. Litton Industries, Inc., 293 F.Supp. 164, 169–170 (S.D.N.Y. 1968). Again, it is asserted in plaintiffs' memorandum of law (and again uncontradicted) that "[t]he warrants provide that Tech Tape upon the request of Sprayregan and without any charge to Sprayregan would register the warrants to permit a public offering of the warrants or warrant shares" (Plaintiffs' Memo. at 9).

However, the Court's ruling herein is based upon non-disclosure to directors of Tech Tape where a conflict of interest existed, that the fee to be paid Sprayregen was grossly in excess of the value of such services and contrary to customary usage with the result that the preferred stock of Tech Tape was sold to SMC for less than its true value or at a deceptive price. To classify this as a garden variety type of state claim for breach of corporate fiduciary duty beyond the reach of the Securities Act is not supported by pertinent authority. The motion to dismiss is denied.

So ordered.

## SUPPLEMENTAL MEMORANDUM

■ By an opinion dated November 5, 1971, this Court denied a motion by defendants to dismiss the within complaint for failure to state a claim under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1971) and for lack of diversity jurisdiction. Having found that plaintiffs did state a claim under Section 10(b), the Court did not reach the question of whether complete diversity of citizenship existed as between plaintiffs and defendants since, jurisdiction having been found under the Securities Exchange Act of 1934, there would thus be pendent jurisdiction over any state cause of action regardless of the absence of diversity of citizenship.

Accordingly, in response to an inquiry of the attorney for the only non-diverse defendant, Edward T. Chappell, this Court did not find it necessary to drop Mr. Chappell as a defendant (which plaintiffs had suggested as a possible alternative) in order to retain federal jurisdiction.