John B. MILLER and Doris Miller, his wife, Plaintiffs-Counterdefendants-Appellees,

v.

SAN SEBASTIAN GOLD MINES, INC., a Nevada Corporation, Edward L. Machulak, James F. McLaughlin and Commerce Group Corp., a Wisconsin Corporation, Defendants-Counterclaimants-Appellants.

No. 75–1195.

United States Court of Appeals, Fifth Circuit.

Oct. 15, 1976.

Stanley Jay Bartel, Hugo L. Black, Jr., Miami, Fla., for defendants-counterclaimants-appellants.

Doris and John Miller, pro se, George Scariano, Metairie, La., for plaintiffs-counterdefendants-appellees.

Appeal from the United States District Court for the Southern District of Florida.

Before DYER, SIMPSON and RONEY, Circuit Judges.

RONEY, Circuit Judge:

In this 10b–5 case a corporation seeks to cancel shares of its stock which were issued to a founder of the corporation without consideration. The district court held there was no deceit, misrepresentation or fraud upon which the corporation could posit a cancellation claim because all of the founding stockholders of the corporation knew that the stock was issued without consideration. The appealing corporation asserts that the inquiry for fraud cannot stop with the founding stockholders, but that the court must consider the transaction's effect on the subsequent public sale of additional corporate stock under the law in this Circuit established by *Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971). We agree and reverse.

This claim, asserted as a counterclaim, is but one part of complex litigation. A simplified statement of the ultimate facts found by the trial court is sufficient for us to address the issues on this appeal. The only finding in dispute concerns the consideration for the subject stock. The appellant corporation asserts that the court correctly found there was no consideration whatsoever for the issuance of the shares, while the appellee stockholder contends that she received her stock for the transfer of a lease to a gold mine. This fact was not controlling under the disposition made by the trial court, but will become important and subject to reconsideration upon our remand of the case.

These are the essential facts: appellees who received the contested shares are John B. Miller, and his wife, Doris Miller. In 1967 John Miller, a specialist in South American investments, went to El Salvador to inspect silver mines. During this trip Miller met Francisco Rojas, an attorney. Rojas controlled an El Salvador corporation known as Mineral San Sebastian, S.A. (Misansa), which owned the rights to exploit all minerals, including gold, from the San Sebastian Gold Mines in El Salvador. Pursuant to arrangements between Miller and Rojas, Miller returned to the States to look for investors for this Central American mining venture.

In the spring of 1968 Miller, Rojas, and three other investors made plans to promote a public corporation to be known as San Sebastian Mines, Inc. (Sanseb). The plan provided that Sanseb would lease the mine from Misansa for mining gold. Funding for the project would come from the above founders and the public issuance of stock. There is no doubt that the Sanseb corporation was formed with the intent of selling its securities to the public at some point in the future. Sanseb was chartered in Nevada on September 4, 1968. On September 10, 1968, one share of stock was issued to each of the three investors for $75,000 cash and one share each to Mrs. Miller and Rojas. Mrs. Miller held her share as nominee for her husband. The district court found that no consideration was given for the Miller and Rojas' shares, a fact known to all the founders.

On April 11, 1969, Sanseb's Board of Directors agreed to a corporate recapitalization plan. Sanseb would sell 92,500 shares of common stock to private investors for $2.00 per share. All the founders, including Mrs. Miller and Rojas, traded their single shares for 30,000 shares of class B stock and warrants to purchase 60,000 shares of common stock. By April 5, 1973, Sanseb had 654,208 outstanding shares.

This counterclaim was filed in the federal district court by the corporation Sanseb for the cancellation of Mrs. Miller's 30,000 shares of stock and the warrant for an additional 60,000 shares of common stock under the federal securities laws. 15 U.S.C.A. § 78aa; [1] 15 U.S.C.A. § 78j(b); [2] Rule X–10b–5, 17 C.F.R. § 240.10b–5.[3]

1. 15 U.S.C.A. § 78aa reads in part:
    The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

2. 15 U.S.C.A. § 78j(b) provides:
    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
    \* \* \* \* \* \*

    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. 17 C.F.R. § 240.10b–5 provides:
    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
        (a) To employ any device, scheme, or artifice to defraud,

The claim squarely raises the question of whether a corporation can assert a 10b–5 claim as a seller of stock where promoters issue stock to themselves without consideration and only subsequent stockholders are injured or complain.

■ A corporation can be a "seller" for purposes of bringing a cause of action under Rule 10b–5. *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 202–203 (5th Cir. 1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). This is particularly true in a case in which the corporation has been induced to issue its shares of stock for no or inadequate consideration. *Hooper v. Mountain States Securities Corp., supra*; *accord, Ruckle v. Roto American Corp.*, 339 F.2d 24 (2d Cir. 1964). In such a case, it is within the equity power of the federal court to allow cancellation of the issued stock. *See* 15 U.S.C.A. § 78aa; *Errion v. Connell*, 236 F.2d 447 (9th Cir. 1956). But, to establish a cause of action or claim under the federal securities laws, there must be some sort of fraud or deceit in the sale of the securities. *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 589 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). The statute itself requires a "manipulative or deceptive device or contrivance," 15 U.S.C.A. § 78j(b), and Rule 10b–5 speaks in terms of fraud and deceit. Rule X–10b–5, 17 C.F.R. § 240.-10b–5; *cf. Rekant v. Desser*, 425 F.2d 872, 877 (5th Cir. 1970).

■ Based on these principles, were only the founding stockholders involved, the district court's decision would be correct. There could be no deceit, misrepresentation or fraud where "the issuance of that original share of stock and the surrender thereof, and the issuance of the 30,000 shares of stock was done in broad daylight with the . . . [founders] all aware of the facts and circumstances that undergirded the issuance of that stock." But with the public

sale came additional stockholders and a different problem.

Although a 10b–5 action is not always narrowly circumscribed by the bounds of common law principles, many apply by analogy. At common law, a conflict of doctrines existed as to the right of a corporation to complain against promoters who caused the corporation to issue them stock for no consideration where none but subsequent stockholders were harmed or complained. The conflict centered around two cases regarding the very same promotion. According to *Old Dominion Copper Mining & Smelting Co. v. Lewisohn*, 210 U.S. 206, 28 S.Ct. 634, 52 L.Ed.2d 1025 (1908), the corporation had no cause of action where none but subsequent shareholders were harmed or complained. But *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 203 Mass. 159, 89 N.E. 193 (1909), *aff'd*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912), held that the corporation could, indeed, complain in such a situation. *See* 1 Fletcher, *Cyclopedia of the Law of Private Corporations* § 196 (perm. ed. 1974); 18 Am. Jur.2d *Corporations* §§ 114, 117 (1965).

*Bailes v. Colonial Press, Inc.*, 444 F.2d 1241 (5th Cir. 1971), appears to have laid this conflict to rest in the Fifth Circuit by adopting the *Bigelow* rule as the standard to be followed in 10b–5 cases. In *Bailes*, a bankruptcy trustee claimed damages on behalf of his bankrupt corporation which the defendants caused to issue stock to Colonial Press, Inc. for all of Colonial's assets and liabilities, represented to be worth $412,000. Colonial was in fact insolvent. The district court dismissed the action because every stockholder, director and officer of the issuing corporation at the time of the transaction had been charged as participants in the deception. The Court found that "[n]o one is left to have been deceived." 444 F.2d at 1245.

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

This Court reversed on the ground that from its inception the scheme was intended to, and did, operate *in futuro* to deceive and damage persons who predictably would rely upon the issuance of stock to Colonial Press. It mattered not that, at the time of the issuance of the stock, all persons then interested in the corporation had knowledge of the proscribed acts. *See* 1 Fletcher, *Cyclopedia of the Law of Private Corporations* § 196, at 690–700 (perm. ed. 1974).

In discussing the rationale for this decision, the Court said:

> At common law the promoters of a corporation stand in a fiduciary relation to the corporation, charged with the duty of good faith as in cases of other trusts. The fiduciary relation continues until the plan or scheme of promotion has been accomplished. Where the plan contemplates simply the organization of the corporation, the promoters' duties end there; but where the plan includes the continued operation of the corporation, its incurrence of taxes, debts and liabilities, and the procurement of capital by sale of the corporation's stock to the public, the obligation of good faith continues to the completion of the plan. . . .

> This action is, of course, not based on the common law, but is brought to enforce a liability or duty created by the Securities Exchange Act of 1934, and more specifically by Section 10(b) of that Act and S.E.A. Rule 10b–5 . . . . Nonetheless many of the principles applicable to common law suits apply by analogy to the present action.

444 F.2d at 1244, 1245. The Court then said:

> There is sufficiently alleged a claim under Rule 10b–5(3), which prohibits "any act, practice or course of business which operates or would operate as a fraud or deceit upon *any person*." Fairly read, the amended complaint claims that American Southern's [the bankrupt corporation's] officers, directors and shareholders caused the corporation to engage in acts which would operate as a fraud or deceit upon others, even though at the

time American Southern engaged in the proscribed acts all persons then interested in the corporation had knowledge. . .

444 F.2d at 1245.

█ *Bailes* must control the disposition of the instant case. To hold otherwise would be beyond the province of this panel. *See* Rule 35, F.R.A.P.; *United States v. Lewis*, 475 F.2d 571, 574 (5th Cir. 1973). The district judge found that the founders made plans to promote a public corporation. The initial incorporation was just the beginning and the promoters' obligation of good faith continued until completion of the plans. That *Bailes* was a bankruptcy case does not distinguish the basic rationale. As the Court expressly stated,

> [t]he fact that persons damaged by dealings with American Southern might have brought independent actions based on the Securities Act, as well as actions not so based, does not preclude American Southern, or its Trustee, from suing for the damage to itself as a corporate entity, thereby effectively pursuing a remedy which might alleviate some of the results of the promoters' fraud.

444 F.2d at 1244. *See Pettit v. American Stock Exchange*, 217 F.Supp. 21 (S.D.N.Y. 1963); 6 L. Loss, *Securities Regulation* ch. 9(C), at 3627–3628 (2d ed. Supp.1969).

Whether the corporation can ultimately prevail will depend upon facts not before us. A clear and accurate disclosure of the consideration for the stock, whether none or some, would, of course, carry forward to subsequent interested persons the no-fraud principles applied by the district court to the founders so far as a 10b–5 cause of action is concerned. Deceit, misrepresentation and fraud are still cornerstones of 10b–5 relief. The burden of proof is on the claimant corporation. But the corporation does not lose simply because all persons involved at the time of the issuance of the subject stock knew of the transaction. Findings must be made by the district court concerning subsequent events that will determine whether or not the corporate claim-

ant can prevail under the principles set forth in *Bailes.*

Alternatively, the district court ruled that the statute of limitations had run on Sanseb's counterclaim, whether the applicable statute was two years or three years from the point of discovery of the fraud. The court based this conclusion on the fact that all the founders knew of the transaction with Mrs. Miller, both at the time the one share was issued and later at the point of recapitalization, and that the period of limitations then commenced.

We pretermit any determination of which statute of limitations should apply. *See, e. g., Bailes v. Colonial Press, Inc., supra,* 444 F.2d at 1246–1247; *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5, 8 (5th Cir. 1967). If there is a determination of a 10b–5 violation upon remand, the district court must determine when the period of limitations commenced. If the action would be barred by the three-year statute, but not the two-year statute, the district court can then decide which statute controls. At this stage of the litigation, we must reverse the district court's ruling that the statute of limitations barred Sanseb's counterclaim.

REVERSED AND REMANDED.