**Harry LEWIS, David Olin, on behalf of himself and all others similarly situated, and Mortimer M. Lerner, Plaintiffs,**

v.

**SPIRAL METAL COMPANY, Inc., Van Alstyne, Noel & Co., David Van Alstyne, Jr., James A. Russell, Melvin Solomon, William J. Butler, Jr., Dominick A. Fitzpatrick, Jack Kaplan, Edward. Tietz, Frederick Fahrendorf, Milton S. Cohn, H. Struve Hensel and Vanco Metals Corporation, Defendants.**

**No. 68 Civ. 4510.**

United States District Court,
S. D. New York.

Sept. 28, 1970.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs; Abraham L. Pomerantz, William E. Haudek, Daniel W. Krasner, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for Van Alstyne, Noel & Co., James A. Russell, Melvin Solomon, William J. Butler, Jr., Dominick A. Fitzpatrick, Vanco Metals Corp.; Stephen P. Duggan, James J. Hagan, Daniel R. Solin, New York City, of counsel.

White & Case, New York City, for David Van Alstyne, Jr.; William D. Conwell, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

Several of the defendants in this stockholder's derivative action move to dismiss the second consolidated amended complaint pursuant to Rule 12(b), Fed.R. Civ.P., on the ground that it fails to state a claim under the federal securities laws upon which relief can be granted.

The action is laid under Sections 10 (b) and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78o(c)(1), and Rules 10b–5 and 15cl–2 promulgated thereunder.

Plaintiffs are shareholders of Spiral Metal Company, Inc. (Spiral), a New Jersey corporation engaged principally in the business of refining and fabricating silver and silver products and trading in precious metals.

The motion is made by the following defendants: Van Alstyne, Noel & Company (Van Alstyne), a partnership registered with the S.E.C. as a broker-dealer; David Van Alstyne, Jr. (Alstyne, Jr.) and James A. Russell (Russell),[1] respectively, the senior and managing partners of Van Alstyne; Melvin Solomon (Solomon), William J. Butler, Jr. (Butler) and Dominick A. Fitzpatrick (Fitzpatrick), at relevant times registered representatives and securities salesmen employed by Van Alstyne [2] ; and Vanco Metals Corporation (Vanco), a wholly owned subsidiary of Van Alstyne.

The complaint under attack alleges that Van Alstyne, acting as the confidential and trusted financial and economic adviser of Spiral, advised Spiral in 1967 to increase substantially its producing facilities. To finance the increase, a public offering of $3,000,000 of Spiral's common stock was proposed with the arrangement to be underwritten by Van Alstyne. When the underwriting was delayed, Van Alstyne advised Spiral to raise capital by the private placement of $1,000,000 face amount of subordinated debentures convertible into Spiral common stock at $8.50 per share. Before placing the debentures Van Alstyne awaited a report on Spiral's current financial position and prospects then being prepared by an independent engineering firm retained and paid by Spiral.

On March 19, 1968, Van Alstyne through Russell received an oral report and on March 21, 1968 a preliminary report in writing which indicated that earnings for the fiscal year ended March 31, 1968 would be up sharply from those of the year before and that the prospects for the future were even

---

1. Russell has also been a director of Spiral since April 8, 1968.

2. Also named as defendants but not joining in the motion to dismiss are several directors and officers of Spiral.

more encouraging.[3] None of this information was available to the public, though apparently fully available to Spiral's Board of Directors. The latest financial figures published by Spiral were those for the fiscal year ended March 31, 1967.

On April 8, 1968 Van Alstyne placed $700,000 of the convertible debentures with Vanco, its subsidiary, and the remaining $300,000 with nine customers and associates. On April 8, 1968 the bid price for Spiral's stock in the over-the-counter market was 11⅜ per share. In approving the debenture purchase agreement, the directors of Spiral relied on Van Alstyne's advice that the terms were fair to Spiral. The advice is alleged to have been "false and misleadingly incomplete in that it failed to reveal the facts, of which Van Alstyne had knowledge or notice, that in light of Spiral's improved financial condition, earnings and prospects, the debenture terms were unfair to Spiral; that the price at which the debentures were sold was grossly inadequate, that the market price of Spiral's stock on and before April 8, 1968 was adversely affected by the non-disclosure to the public of Spiral's improved earnings and prospects, and that debentures providing for terms substantially more advantageous to Spiral could be placed with other lenders upon disclosure to them of such information."

It is not alleged that Spiral's directors were not fully advised of Spiral's improved financial condition and it is charged that in selling the debentures to Van Alstyne the directors acted "in reckless disregard of their duties to Spiral equivalent to fraud."

Spiral's improved financial condition was not disclosed to the public until June 7, 1968, the date Spiral's registration statement was filed.

On October 4, 1968 the bid price of Spiral's common stock was $35 per share. It is not alleged that Van Alstyne, or any of the others who received the deben-tures, converted on October 4 or any other day. However, plaintiffs measure defendants' profits by the price of the Spiral common stock that would have been received had defendants converted and sold on October 4.

In addition to the debenture transaction, the single count complaint alleges that defendants Van Alstyne, Alstyne, Jr., Russell, Solomon, Butler and Fitzpatrick, knowing that Spiral's true position had not been disclosed to the public, purchased Spiral shares either for their own accounts or for the accounts of their customers and that as of October 4, 1968 profits in excess of $600,000 had accrued on. these shares. These purchases, it is alleged, were made pursuant to a conspiracy to profit from the private use of inside information belonging to Spiral. These transactions are alleged to have operated as a fraud or deceit upon Spiral and the relief requested is recovery of the profits for the benefit of Spiral.

### The Debenture Transaction

With respect to the debenture transaction, it is not alleged that the directors of Spiral were not fully aware of the facts concerning the improved financial condition of the Company when they approved the conversion price of $8.50 per share:

"Thus, [t]he critical issue here * * * is this: under what circumstances does full knowledge of material inside information by the board of directors of a corporation selling securities adequately protect the shareholders from the deceptive practices prohibited by Section 10(b), and Rule 10(b)–5." Penn Mart Realty Company v. Becker, 300 F.Supp. 731. 735 (S.D.N.Y.1969).

This issue was before the Court of Appeals in Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. en banc 1968). Schoenbaum was a derivative action on behalf of Banff Oil Ltd. In February,

---

**3.** On April 22, 1968 Van Alstyne received a copy of the final report which confirmed the facts in the preliminary report.

1964 Aquitaine acquired control of Banff and designated three representatives to sit on Banff's eight-man board of directors. The complaint alleged that Banff's board of directors agreed to sell 500,000 shares of Banff stock to Aquitaine and 270,000 shares of Banff stock to Paribas, an investment banking corporation, at approximately the current market price at a time when they knew of oil discoveries and a consequent increase in the value of Banff stock. In holding that the complaint stated a claim under Rule 10b–5 against Aquitaine but not against Paribas, the Court said:

> "As to Paribas it appears that the negotiations for the purchase of treasury stock were arm's length negotiations. There is no reason to believe that Paribas was in possession of any information not available to Banff and, more importantly, there is no reason to believe that Paribas was in any position to influence the judgment of Banff directors by any improper means. Paribas and the purchasers whom it represented were, so far as appears, unconnected with Banff and unable through ownership of Banff stock or otherwise to bring any pressure on Banff to sell its stock at a price below its true value. For these reasons the dismissal of the complaint as to Paribas is affirmed." 405 F.2d at 219.

As to the sale to Aquitaine, the Court stated:

> "In the present case it is alleged that Aquitaine exercised a controlling influence over the issuance to it of treasury stock of Banff for a wholly inadequate consideration. If it is established that the transaction took place as alleged it constituted a violation of Rule 10b–5 because Aquitaine engaged in an 'act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.' * *" 405 F.2d at 219–220.

Thus, absent improper influence or control over a corporation's board of directors, if the board has full knowledge of all material facts the corporation is not a defrauded purchaser or seller within the meaning of Rule 10b–5.

More recently, in Penn Mart Realty Company v. Becker, supra, the *Schoenbaum* issue was again presented. In that case Glen Alden Corporation had decided to make a tender offer for Schenley Industries, Inc. for a price equivalent to $80 per share. After making this decision but before the tender offer was made public, Glen Alden sold 92,700 shares of Schenley for $63 per share to a mutual fund whose aid Glen Alden sought to enlist in taking over Schenley. Plaintiff's complaint on behalf of Glen Alden sought to recover the money lost upon the sale of Schenley stock to the mutual fund at a bargain price.

In holding that the complaint failed to state a claim under Rule 10b–5, the Court stated the rationale of the *Schoenbaum* ruling as follows:

> "Since the board of directors as the governing body of the corporation is authorized to represent the corporation (and hence the shareholders) in these security transactions, shareholder protection under Rule 10b–5 is normally assured if the board is fully informed. Section 10(b) and Rule 10b–5 do not require more even if the directors make such a serious mistake as to amount to a waste of corporate assets by selling the securities at far too low a price. It should be apparent that each shareholder cannot be informed in all instances where the corporation sells securities while in possession of material inside information. To require such disclosure would strangle corporate investment sources whenever good business reasons dictate the withholding from the public of material information.

> "Where, however, all directors are aware of all the facts, but the majority of the board is controlled by the purchaser or the majority of the board has a conflict of interest in the transaction, shareholders are not protected

under the anti-fraud provisions. The reason should be very clear. Just as the board cannot protect shareholder interests where it has been deceived by the outside purchase, so it will not protect shareholders where it is controlled by the purchaser or a majority of its members have other interests in the transaction." 300 F.Supp. at 735–736.

As to the transaction under attack in *Penn Mart,* the Court concluded:

"The directors may have bargained poorly; they may even have wasted Glen Alden's assets. But these allegations do not disclose deception of the type prohibited by Rule 10b–5." 300 F.Supp. at 736.

 In the case at bar the directors of Spiral were fully cognizant of the facts which plaintiffs allege caused the price of Spiral to soar when they were disclosed. Whatever the directors' motives for approving the debenture conversion terms may have been, there is no allegation that Van Alstyne either controlled the Spiral board or exerted any "improper influence" over it or that the transaction was other than an arm's length one, within the meaning of *Schoenbaum.* Accordingly, the complaint fails to state a claim under Rule 10b–5 with respect to the debenture transaction.

*Purchases by Van Alstyne Associates*

 With respect to the allegations that the moving defendants purchased Spiral stock in the over-the-counter market after they acquired inside information about the financial condition of the Company, plaintiffs concede that they fail to meet the purchaser or seller requirement of Rule 10b–5 and therefore do not state a claim under that Rule.[4] Plaintiffs now shift their reliance to Section 15(c) (1) which provides in pertinent part as follows:

"No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in * * * any security * * * by means of any manipulative, deceptive, or other fraudulent device or contrivance. * * *"

However, this aspect of the complaint is defective under Section 15(c) (1) for the same reasons it fails to state a claim under Rule 10b–5. Iroquois Industries, Inc. v. Syracuse China Corporation, supra, 417 F.2d at 970; Hirsh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 311 F.Supp. 1283 (S.D.N.Y. March 20, 1970); Sanders v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 68 Civ. 3522 (S.D.N.Y., filed June 26, 1970).

Thus the complaint fails to state a claim under the federal securities laws. Since there is no other basis of federal jurisdiction, the motion by various defendants to dismiss the complaint is granted. Judgment dismissing the complaint as against the moving defendants Van Alstyne, Alstyne, Jr., Russell, Solomon, Butler, Fitzpatrick and Vanco will be entered accordingly.

It is so ordered.

---

4. Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968); Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969).