Harry **LEWIS**, Plaintiff,

v.

Louis S. **ADLER** et al., Defendants.

No. 69 Civ. 5518.

United States District Court,
S. D. New York.

March 16, 1971.

Supplemental Memorandum and Order
April 22, 1971.

On Application for Rule 54(b) Certificate May 21, 1971.

Garwin & Bronzaft, New York City, for plaintiff; Sidney L. Garwin, Bertram Bronzaft, New York City, of counsel.

Nickerson, Kramer, Lowenstein, Nessen & Kamin, New York City, for defendants Lifton, Weingrow, Hechler and Blaine; Geoffrey M. Kalmus, Robert M. Heller, New York City, of counsel.

## OPINION

LASKER, District Judge.

In this shareholder's derivative suit the individual defendants move to dismiss the first cause of action in plaintiff's complaint for failure to state a claim on which relief can be granted, Rule 12(b) (6), F.R.Civ.P., or, in the alternative, to grant summary judgment for the defendants on the first claim under Rule 56, F.R.Civ.P. The plaintiff opposes these motions and has moved separately for summary judgment under Rule 56, F.R.Civ.P., against defendant Sol Blaine on the second cause of action

of the complaint, which relates solely to Blaine.[1]

Jurisdiction is founded on § 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa. The complaint alleges violations of §§ 10(b) and 16(b) of the 1934 Act, 15 U.S.C.A. §§ 78j(b) and 78p (b), and of Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (hereinafter § 10(b), § 16(b), and Rule 10b–5).

### FACTS

#### 1. *The § 10(b) Claim*

Plaintiff, a citizen of New York State, is and has been a shareholder of Transcontinental Investing Corporation ("TIC") since before 1965. TIC, a Delaware corporation, has its principal place of business in New York City and at all times mentioned in the complaint traded its stock on the American Stock Exchange. All the individual defendants herein were directors of TIC at the time of the actions complained of.

TIC was organized in 1960 with all the individual defendants, except Blaine, constituting its board of directors. In the spring of 1963 TIC added to its diverse investments its acquisition of North American Acceptance Corporation ("North American"), a consumer finance company owned in part by Blaine. At this time Blaine entered into a ten-year employment agreement to serve as the president and chief executive officer of North American. Among the terms of this employment agreement was the grant of a restricted stock option (Option I) to Blaine providing for the purchase of 35,000 shares of TIC stock; this option was never exercised.

As North American prospered, TIC began to involve Blaine in many other aspects of TIC's operations. Blaine became a director of TIC shortly after the acquisition of North American. His

contribution was deemed valuable by the TIC board, and they decided to extend his employment agreement in 1967. The new agreement, running to 1976, increased Blaine's salary and granted him a new stock option to be governed by the provisions of TIC's Qualified Stock Option Plan, which had been established in 1965. This new stock option (Option II) was made subject to the approval of the shareholders, and provided opportunity for the purchase of 100,000 of TIC's shares at a price of $1 per share.

A proxy solicitation by TIC's management seeking the necessary approval of Option II was prepared and mailed to the shareholders. Provision was made for vote on the proxy at a special shareholders meeting in lieu of the annual meeting to be held in the spring of 1967. At the time of the proxy solicitation mailing, the price for TIC stock had risen to $4–5 per share from a price of $1.75 per share at the time that Option II was included in the employment agreement. At this point, reportedly because of the increase in the market price, Option II was renegotiated by the company and Blaine, and reduced to 50,000 shares.

Between the mailing of the proxy and the shareholders meeting on June 28, 1967, TIC stock rose further in price to $5.50–$6 per share, and the contract of employment was amended by the company and Blaine to delete provision for Option II altogether on June 27, 1967.

TIC's president, Robert K. Lifton, made these facts known at the shareholders meeting on June 28, 1967, and, although sufficient votes (in person or by proxy) were available to approve Option II, the shareholders were advised that the option had been withdrawn and the matter was removed from the agenda. The president of TIC states in his affidavit on this motion that the "en-

---

1. Adler, the first named defendant herein has not been served with process and thus is not a party to this motion. The corporate defendant, Transcontinental In-

vesting Corporation, has appeared in the action but does not appear on these motions.

tire series of amendments was negotiated at arm's length between Mr. Blaine and TIC's management. Indeed, throughout Mr. Blaine was represented by his own counsel and TIC by its corporate counsel." (Affidavit of Robert K. Lifton, sworn to April 14, 1970).

On June 29, 1967, TIC's stock option committee, composed of defendants Lifton, Weingrow and Hechler, issued Blaine a qualified stock option (under the company's Qualified Stock Option Plan) for 50,000 shares of TIC stock at the then market price of $5.6875 per share (Option III). The members of the stock option committee controlled in roughly equal proportions 25% of the outstanding TIC shares, and they were the controlling shareholders of TIC. By the provisions of the Qualified Stock Option Plan no owner of more than 5% of TIC's stock can be granted an option. On February 4, 1969, Blaine purchased 50,000 shares of TIC stock in exercise of Option III at the $5.6875 fixed price.

These events took place during a period of growth for TIC. The corporation had a net income for the year ending December 31, 1965 of $1,504,000; net income for the next year was $1,324,000. TIC's earnings for the first half of the year 1967 were reported by its president at the June 28, 1967 shareholders meeting. He stated that those earnings were as good as 1966 and would probably pass the previous year's if the trend then apparent continued. The trend did continue, and the net earnings for the year ending December 31, 1967 were $3,513,-000. TIC continued to invest in diversified enterprises with such a large measure of success that net earnings for 1968 at year's end were $6,260,000. The TIC prospectus for 1969 at page 6 discussed the fluctuations in its net income, and recited, as one of five factors in explanation, "the increase in volume of loans and consequently interest income of North American Acceptance Corporation through the year 1966 and its decline in 1967 and the first six months of 1968 * * * "

### 2. *The § 16(b) Claim*

Prior to Blaine's exercise of Option III on February 4, 1969, he had made several sales of the TIC stock which he then owned; he also made sales after exercising the option. On September 24, 1968, he sold 1,000 shares of TIC stock; on December 13, 1968, he sold 600 shares. Blaine reported on his SEC Form 4 for December 13, 1968, that he transferred 259 shares of TIC stock. The Atlanta Jewish Welfare Fund, he later explained, received 200 of these shares as a gift, with the balance donated to the Jewish Home. (Affidavit of Sol Blaine, sworn to June 11, 1970). A further transfer, reported on November 1, 1968, set forth the sale of 1,000 shares. Although reported on an SEC Form 4 bearing the November 1, 1968 date, Blaine avers that "this sale simply didn't take place, though I acknowledge that it appears on my Form 4 for that month. Some months earlier, in the spring of 1968, I had sold 1,000 TIC shares; I overlooked filing a Form 4 with respect to the sale at that time." (Id.)

Blaine also disposed of 5,000 TIC shares on February 21, 1969. The lower market value price within six months of this transaction was $14.25. Blaine admits such a transfer of stock took place, but states: "It was a private transfer in which I sold 5,000 TIC shares to an acquaintance at their cost to me—$5.6875 per share—to compensate him for a large loan he had made at an earlier time." (Id.) While the plaintiff had indicated a selling price for this transaction at $24.125, Blaine indicates that such a price is merely "the market price shown in the newspapers," and not the actual sale price. (Id.)

## CONTENTIONS OF THE PARTIES

### A. The Plaintiff

Four key grounds emerge from the complaint and allegedly constitute § 10 (b) violations:

(a) The TIC board failed to vote the proxies of the shareholders authorizing

the grant of Option II to Blaine as embodied in the employment contract.[2]

(b) The TIC board made false and misleading staements and omitted to set forth material facts regarding the option arrangements, i. e., (i) that cancelling Option II was at the expense of and to the detriment of TIC, (ii) that the tax advantages were lost to TIC because Option II was cancelled, (iii) that inside information revealed that the first six months of 1967 would show much greater profits than the same period in 1966, that the 1967 earnings per share would double over the 1966 earnings, that TIC stock could be predicted to rise considerably in value when this information was revealed, and that such information was not disclosed, (iv) "that the cancellation of the Restricted option [Option II] was a prerequisite for any exercise by Blaine of the Qualified Stock Option [Option III]," (Par. 18(b) of complaint), and (v) that Option II "contained restrictions which made it inexpedient for Blaine to exercise" it to take advantage of inside information, and that Option III "would permit him to exercise his option at any time he desired." (Par. 18(d) of complaint). The misstatements and omissions are alleged to have occurred partially in connection with the June 1967 shareholders meeting and in the Form 8–K report.

(c) The third ground alleged to constitute a § 10(b) violation is that the prospect of TIC's growth constituted inside information withheld from shareholders and used to grant Blaine's option. Plaintiff therefore argues that Option III should be cancelled under the ruling of Securities and Exchange Commission v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968).

(d) The final ground is that Option III was granted without separate consideration and that the shares purchased in exercise of Option III were acquired for insuficient consideration.

The actions, plaintiff urges, worked a fraud on TIC and violated § 10(b) and Rule 10b–5. Plaintiff also alleges State common law claims that defendants violated their fiduciary duty to TIC and its shareholders by causing the sale of TIC stock for inadequate consideration, and that the unjust enrichment of Blaine should be returned to TIC as damages. He also seeks cancellation of Option III and other relief.

Plaintiff opposes the motion to dismiss the first cause of action, arguing that the complaint establishes a claim under § 10(b) or, in the alternative, that a good cause of action for common law breach of fiduciary duty or corporate waste is stated, and that this court may retain jurisdiction of the latter under the doctrine of pendent jurisdiction. Plaintiff also has asserted diversity jurisdiction.

The second cause of action is against Blaine alone. It alleges that he made five sales of TIC stock within six months of the exercise of Option III on February 4, 1969, and seeks recovery of short swing profits under § 16(b). Plaintiff moves for summary judgment on the question of Blaine's liability.

**B. Defendants on the § 10(b) claim**

Defendants assert that there is no federal jurisdiction as to the first cause of action since it does not state a claim under § 10(b) and there is no other predicate for jurisdiction. The complaint does not allege that the directors responsible for issuing the stock option to

---

2. Paragraph 10 of the complaint recites that "[i]n contravention of the directions of the stockholders, said proposal [the vote on granting Option II] was not voted upon by the stockholders and said option was not granted to defendant Blaine." Counsel for Lewis press this point in plaintiff's Memorandum in Opposition to Defendants' Motion, at p. 11, where they state: "Irrespective of whether we have stated a cause of action under Rule 10b (5), even the defendants concede that we have stated a cause of action under common law." Counsel then argues that jurisdiction exists under the doctrine of pendent jurisdiction.

Plaintiff's counsel never does establish how these allegations as to the proxy vote relate to § 10(b), whatever their merit under State law.

Blaine were themselves unaware of material facts which were withheld from them, or were misled, or were subject to any conflict of interest on their part, or might have gained any benefit personally from the issuance of the stock option, and in the absence of any such allegation the requirements of § 10(b) are not met. In support of their contention they rely on Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. en banc 1968), cert. den. sub nom. Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969). They argue that the issuance of Option III was nothing more than the exercise of sound and honest business judgment, and that if the plaintiff has any cause of action it is solely for common law corporate waste or breach of fiduciary duty.

Defendants further observe that diversity of citizenship exists only between plaintiff and defendant Blaine. They argue that the residual common law claims in the first cause of action ought not to be maintained in federal court on the doctrine of pendent jurisdiction because they are totally unrelated to the only surviving cause of action in the complaint, the § 16(b) claim against Blaine.

### C. Defendant Blaine on the § 16(b) claim

Blaine admits the impropriety of his September 24, 1968 sale of 1,000 shares and the December 13, 1968 sale of 600 shares. He contests the allegations of impropriety as to all the other sales. The alleged November 1, 1968 transfer he asserts did not occur within the six months period in question. The other transfers he claims were neither purchases nor sales, stating that the December 13, 1968 transfer of 250 shares was a charitable gift and that the February 21, 1969 transfer of 5,000 shares "wasn't a sale at market price but a private transfer of the shares at their cost to me" to compensate an acquaintance for a "large loan." (Affidavit of Sol Blaine, sworn to June 11, 1970).

On this showing Blaine urges that his liability on plaintiff's motion for summary judgment against him must be limited to the two admitted sales.

### ISSUES

Three issues are presented for decision: (1) Does the plaintiff's first cause of action state a valid claim under § 10 (b)? (2) If not, should this court retain jurisdiction as to the State causes of action? (3) Is plaintiff entitled to summary judgment as to the liability of Blaine for violations of § 16(b)?

### DISCUSSION

#### (1) § 10(b) claims

##### Grounds (a) and (b):

■ Defendants do not contest the possible application of § 10(b) to TIC's issuance of shares through the Qualified Stock Option Plan, Option III. The issuance of shares "is a 'sale' to which the anti-fraud policy expressed in the federal securities laws extends." Ruckle v. Roto American Corp., 339 F.2d 24, 27 (2d Cir. 1964). Despite this application, defendants assert the complaint here fails to state a good § 10(b) claim. I find that the defendants' motion to dismiss for failure to state a claim is meritorious, and accordingly it is granted on the basis of the reasoning set forth below.

Although the plaintiff alleges, as § 10 (b) claims, the failure to vote proxies on Option II and the omission of certain facts and the making of false statements by defendants at the June 1967 shareholders meeting and in the TIC Form 8–K report, if he is to state a good cause of action under § 10(b) he must also allege that somehow material information was withheld from the board of directors, that the board members were deceived, or that the independence of their judgment was impaired by a conflict of interest or other improper influence. Schoenbaum v. Firstbrook, supra.

Without alleging these further elements, grounds (a) and (b) of the § 10

(b) claim must be dismissed under Schoenbaum v. Firstbrook, *supra*. There an investment banking corporation, Paribas, had purchased stock from Banff Oil Company just before announcements of certain oil discoveries which drove the price of the stock up from $7.30 to $18 per share. The court held that no § 10(b) claim had been established as to the purchases by Paribas, and affirmed the motion to dismiss as follows:

"As to Paribas it appears that the negotiations for the purchase of treasury stock were arm's length negotiations. There is no reason to believe that Paribas was in possession of any information not available to Banff [whose directors authorized the sale of the stock] and, more importantly, there is no reason to believe that Paribas was in any position to influence the judgment of the Banff directors by any improper means. Paribas and the purchasers whom it represented were, so far as appears, unconnected with Banff and unable through ownership of Banff stock or otherwise to bring any pressure on Banff to sell its stock at a price below its true value. For these reasons the dismissal of the complaint as to Paribas is affirmed." Schoenbaum v. Firstbrook, supra, 405 F.2d at 219.

This court has followed the ruling in *Schoenbaum,* supra, and has granted motions to dismiss in Penn Mart Realty Co. v. Becker, 300 F.Supp. 731 (S.D.N.Y. 1969), and Lewis v. Spiral Metal Co., 317 F.Supp. 905 (S.D.N.Y., 1970).[3]

Here the complaint does not allege that the board was deceived or that material information was withheld from it. Blaine is not alleged to have been in a position inordinately to influence the TIC board or its stock option committee.

The plaintiff has not alleged nor shown that the negotiations for the revisions in Option II and the subsequent grant of Option III were not at arm's length. Blaine's holdings in TIC were not large enough to have influenced the board's stock option committee, whose members were themselves TIC's controlling shareholders and, as holders each of more than 5% of TIC's stock, were not even eligible for options themselves. Indeed, as large investors in TIC the members of the stock option committee stood to lose the most if TIC were damaged by their action in granting the option.

The fatal deficiency created by the absence of such allegations is not cured by recitals of the failure to vote the proxies on Option II, the failure to assert the tax consequences attendant on each option, and the alleged failure to recite the growth potential of TIC. These claims do not frame a cause of action under § 10(b), regardless of whatever merit they may have under State law.

Nor do plaintiff's assertions that there were material omissions in TIC's current report on Form 8–K, as required under § 13(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78m(a), and under 17 C.F.R. § 240.13a–11 promulgated thereunder, save his § 10(b) claims. The current report is directed primarily to the SEC, and not made "in connection with the purchase or sale of any security" under § 10(b), but rather "for the proper protection of investors and to insure fair dealing in the security" under § 13(a). Furthermore, the report appears to have set forth the essence of the option negotiations with Blaine, and there is no claim or evidence that the report misled the SEC or any TIC shareholder who may have relied upon it.

---

3. Plaintiff, in opposing this motion to dismiss, cites another development in Lewis v. Spiral Metal Co., reported at CCH Fed.Sec.L.Rep. ¶ 92,919 (S.D.N.Y. Jan. 11, 1971). There the court, after reviewing the entire file of the case and all prior proceedings, denied a motion for summary judgment by certain remaining defendants. Whatever the factual context upon which that motion for summary judgment was denied, however, the ruling is not controlling here, where dismissal is based on failure of a complaint to state a cause of action under Rule 12 (b) rather than under Rule 56.

*Ground (c)*

The plaintiff's contentions that Option III ought to be cancelled under the ruling of Securities and Exchange Commission v. Texas Gulf Sulphur Co., supra, because the directors had inside information regarding the growth expectations of TIC which the shareholders did not have, are not supported by the record. To the contrary, the record establishes that the information was disclosed. There being no genuine dispute as to material facts, the defendants are entitled to summary judgment on this ground.

In support of this claim plaintiff alleges only that:

"In addition, the directors of TIC knew that TIC was then engaged in a tremendous acquisition program, some or all of which were undoubtedly in the process of negotiation at the time that the stock options were granted to Mr. Blaine." (Affidavit of Sidney I. Garwin, plaintiff's counsel, sworn to June 25, 1970, at pp. 10–11).

On the other hand, the record affirmatively establishes that this so-called inside information was made known to the shareholders. The affidavit of TIC's president states that the board told the shareholders at the June 1967 meeting of the reasoned optimism with which the board then viewed the immediate future growth of the company, and that such was the extent of the board's knowledge. Shortly after the June 1967 meeting, a summary statement of that meeting was mailed to all shareholders, reporting:

"The combination of better results from some of our existing companies and the contributions that are being made by our newer acquisitions indicates a first half at least as good, if not better, than last year. If this trend continues, 1967 could be a banner year for the company." (Affidavit of Robert K. Lifton, sworn to April 14, 1970, at p. 14).

To be sure, the board did not advise the stockholders of every item of information within its ken, but such material

as was omitted falls within the observation of Judge Tyler in Penn Mart Realty Co. v. Becker, supra, 300 F.Supp. at 735–736, that

"It should be apparent that each shareholder cannot be informed in all instances where the corporation sells securities while in possession of material inside information. To require such disclosure would strangle corporate investment sources whenever good business reasons dictate the withholding from the public of material information."

The disclosure was made of TIC's bright growth prospects. Nor is there any showing that Blaine improperly used inside information to wait until 1969 to exercise his stock option. The facts here appear more akin to the following discussion in Securities and Exchange Commission v. Texas Gulf Sulphur Co., supra, 401 F.2d at 848–849, than they do to any discussion requiring the cancellation of stock options:

"An insider is not, of course, always foreclosed from investing in his own company merely because he may be more familiar with company operations than are outside investors. An insider's duty to disclose information or his duty to abstain from dealing in his company's securities arises only in 'those situations which are essentially extraordinary in nature and which are reasonably certain to have a substantial effect on the market price of the security if [the extraordinary situation is] disclosed.' * * * Nor is an insider obligated to confer upon outside investors the benefit of his superior financial or other expert analysis by disclosing his educated guesses or predictions. * * * The only regulatory objective is that access to material information be enjoyed equally, but this objective requires nothing more than the disclosure of basic facts so that outsiders may draw upon their own evaluative expertise in reaching their own investment decisions with knowledge equal to that of the insiders."

*Ground (d)*

█ The final ground upon which plaintiff founds his § 10(b) cause of action is the failure of Blaine to give independent consideration for Option III and the issuance of stock pursuant to Option III for insufficient consideration. Whatever the merits of these claims may be under State law, no § 10(b) claim is framed. The allegations required under Schoenbaum v. Firstbrook, supra, are lacking. The record indicates that the shareholders approved TIC's Qualified Stock Option Plan in 1965; its purpose, as stated in the first paragraph of the Plan, is to afford "an incentive to certain key employees of the Company and its subsidiaries" by granting stock options "and thereby advancing the interests of the Company."

The record amply establishes that Blaine was within the category covered by the stock option; the plaintiff has not shown or alleged a giving away of corporate shares. By themselves, the grant of Option III and the exercise of it do not come within § 10(b). This section, as delineated in Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, 464, is "directed solely at that type of misrepresentation or fraudulent practice usually associated with the sale or purchase of securities rather than at fraudulent mismanagement of corporate affairs * * *" Whatever remain of plaintiff's allegations as to corporate waste or breach of fiduciary duties are questions of State law. The motion to dismiss under Rule 12(b) (6), F.R.Civ. P., is granted as to this final ground.

(2) *Remaining Claims at State Law*

Plaintiff urges that, even if he has not stated a cause of action under § 10 (b), he has certainly set forth a claim for common law breach of fiduciary du-

ties and corporate waste, as well as a violation of State law for failure to vote the Proxies on Option II. He contends that, since his second cause of action is established beyond dispute under § 16(b), the first cause of action ought to be retained by this court at least under the doctrine of pendent jurisdiction.[4]

█ However, to maintain the first cause of action on the basis of pendent jurisdiction would be to misapply the doctrine. Here, the State law claims contained in the first cause of action are wholly independent of and unrelated to the § 16(b) cause of action. Decision as to Blaine on the § 16(b) claims in no way necessitates a determination of the various possible State claims. Moreover, Blaine is the only defendant against whom diversity of jurisdiction would exist on the State claims, and suit in State court is appropriate.

"Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." United Mine Workers of America v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 1140, 16 L.Ed.2d 218 (1966). Accordingly, the first cause of action is dismissed under Rule 12(b) (6), F.R. Civ.P., as to the moving parties herein and as to the corporate defendant, TIC.

(3) § *16(b) Claims and Summary Judgment*

█ The exercise of an option is a "purchase" under § 16(b). Blau v. Ogsbury, 210 F.2d 426 (2d Cir. 1954). On the facts before this court, summary judgment for the plaintiff establishing Blaine's liability is appropriate for four of the five sales made by Blaine in the six months period surrounding his exercise of Option III. Blaine has admitted

4. The complaint seeks to found jurisdiction on diversity of citizenship of the parties, as well as the Securities Act of 1934. It appears that diversity exists only as to defendant Blaine, who is not a New York resident, and therefore diversity jurisdic-

tion is not established on the first count of the complaint. Diversity exists as to the second count against Blaine alone, but is an unnecessary supplemental ground because jurisdiction is established under § 16(b).

that two of the transactions are subject to § 16(b):

> "One was the sale of 1,000 TIC shares on September 24, 1968 at a price of $21.50 per share. The other was the sale of 600 TIC shares on December 13, 1968 at a price of $25.25 per share. I don't dispute that these two transactions are subject to § 16(b) * * *" (Affidavit of Sol Blaine, sworn to June 11, 1970).

Blaine contests the February 21, 1969 transfer of 5,000 shares. He argues that it was in compensation for monies loaned to him and was not a sale. He avers that he made no profit from the transaction because he sold his shares at cost. The profit or lack thereof on this transfer of 5,000 shares must be determined at a later date. The transaction itself is a sale under § 16(b) as a matter of law. Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir. 1943). Blaine is liable for this "sale."

Blaine suggests further that his transfer of 259 shares on December 13, 1968 was not a sale because it was a gift to two charities. However, such a transfer would be exempt under § 16(b) only if the charitable gift was valued at less than $3,000 in market value under 17 C.F.R. §§ 240.16a–9(b) and 240.16a–10. Plaintiff in his statement submitted pursuant to Rule 9(g) of the General Rules of this Court sets forth the "lower market value" during the six months period around the December 13, 1968 gift to the charities as $15.75. Blaine admits its accuracy as "the lowest prices of TIC stock during the 6 months" in his Rule 9(g) statement. Based on this uncontested fact, the market value of the transfer was at least $3,937.50, and accordingly the transfer does not fall within the exemption. Therefore Blaine is liable for his profit on the transaction, if any.

A question of fact exists as to the alleged November 1, 1968 transfer. Blaine asserts that it occurred in the spring of 1968, before the six months period involved here, and was belatedly and mistakenly reported in November

as if it had occurred in that month. This question must be resolved at trial, and as to it summary judgment is denied.

Accordingly, plaintiff is entitled to summary judgment as to Blaine's liability for the sales of 1,000 shares on September 24, 1968, of 600 shares on December 13, 1968, of the 259 shares gift to charities on December 13, 1968, and of the 5,000 shares on February 21, 1969.

## CONCLUSION

Plaintiff's first cause of action, alleging material set forth in subparagraphs (a), (b) and (d) of the "Contentions of the Plaintiff," is dismissed.

Summary judgment is granted the defendants as to allegations (1) that there was an actionable failure to disclose either in the Form 8–K statements, or the oral statement at or the written statement following the June 1967 meeting of shareholders; and (2) that there was misuse of inside information in connection with granting an option to Blaine.

Summary judgment is granted the plaintiff as to Blaine's liability under § 16(b) for all of Blaine's transactions set forth in the complaint except that reported by him to the SEC to have occurred November 1, 1968.

Submit order.

## SUPPLEMENTAL MEMORANDUM AND ORDER

By Opinion dated March 16, 1971, and Order filed March 25, 1971, this court granted plaintiff's motion for summary judgment as to certain transactions governed by Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p (b), including judgment as to the liability of defendant Sol Blaine for the transfer of 259 shares of common stock of Transcontinental Investing Corporation to two charitable organizations.

The determination of liability was based on the assumption that 17 C.F.R. § 240.16a–9 (applicable to § 16(b) transactions through incorporation in 17 C.F.R. § 240.16a–10) applied to the case.

A reexamination of 17 C.F.R. § 240.16a–10, however, indicates that it incorporates the provisions of 17 C.F.R. § 240.-16a–9 only "in so far as [the transaction] is otherwise subject to the provisions of section 16(b)." Shaw v. Dreyfus, 172 F.2d 140 (2d Cir. 1949), cert. den. 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949), and Truncale v. Blumberg, 80 F.Supp. 387 (S.D.N.Y. 1948), have determined that a bona fide gift is not subject to the provisions of § 16(b) of the Act. As a result, neither section of the Regulations relied on applies to the case at hand.

While the period within which the defendant could move for reargument has passed, General Rule 9(m) S.D.N.Y., this court has the inherent authority to alter its final judgment within the period of the term at which it was given. Zimmern v. United States, 298 U.S. 167, 169, 56 S.Ct. 706, 80 L.Ed. 1118 (1936). In any event, the plaintiff does not appear to object to the requested correction.

Accordingly, on the court's own motion, the decision of March 16, 1971 is amended by substituting for the third paragraph on page 20 the following:

> Summary judgment is granted the plaintiff as to Blaine's liability under § 16(b) for all of Blaine's transactions set forth in the complaint except (1) that reported by him to the SEC to have occurred November 1, 1968, and (2) the 259 shares listed in Blaine's SEC Form 4 of December 13, 1968, alleged by him to have been transferred as charitable gifts.

The order of March 25, 1971, is amended by substituting for paragraph 4 thereof the following:

> Plaintiff's motion for summary judgment against defendant Sol Blaine, only, on the issue of liability under § 16(b) of the Securities Exchange Act of 1934, pursuant to plaintiff's second cause of action set forth in the complaint, is granted as to the 1,000 share sale of Transcontinental Investing Corporation ("TIC") common stock on September 24, 1968; the 600 share sale of TIC common stock on December 13, 1968; the 5,000 share sale on February 21, 1969; and denied as to the 1,000 share sale of TIC common stock alleged to have taken place on November 1, 1968, and the 259 share sale of TIC common stock on December 13, 1968.

It is so ordered.

## ON APPLICATION FOR RULE 54(b) CERTIFICATE

Plaintiff has submitted a proposed Order certifying, pursuant to Rule 54 (b), F.R.Civ.P., that no just reason for delay exists as to why final judgment ought not to be entered as to the decision of this court in its opinion of March 16, 1971 dismissing portions of the first count of the complaint and granting summary judgment for remaining portions of that count. The moving defendants on the prior motions have consented to the entry of the proposed Order. No motion seeking that such an Order issue has been formally made.

While "Rule 54(b) orders should not be entered routinely or as a courtesy to counsel," Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 275 (2d Cir. 1968), nonetheless where, as here, determination is complete as to the predominant count of the complaint, where what remains does not involve the issues of that count and the only remaining defendant consents, where appeal of the decision of March 16, 1971 and Order of March 25, 1971 as to count one of the complaint would not impede the trial of the separate narrow and distinct issues remaining in count two, there is no just reason for delay of the entry of final judgment for count one.

Based on these considerations, we treat the proposed Order as an application for a Rule 54(b) certificate.

Accordingly, the Clerk is directed to enter final judgment as to the disposition of count one, paragraphs 1 through 3, of the Order of March 25, 1971.

It is so ordered.