402 F.2d 158
 4 A.L.R.Fed. 1037
 John A. MADER, Ernest W. Wilson and Max O. Miller,
Plaintiffs-Appellants,
v.
Daniel E. ARMEL, Robert N. Savage, Robert E. S. Young, Clark
E. Patton, Jay W. Kent, Jr., Executor, etc., D. S. Cowles,
S. O. Nolte, Joseph B. DeVennish, Gilman D. Kirk, Amanda
Howard Eaton, Executrix, etc., Todd Tibbals and Virgil
Bolovan, Defendants-Appellees.
 No. 17976.
 United States Court of Appeals Sixth Circuit.
 Oct. 29, 1968, Certiorari Denied March 24, 1969, See 89
S.Ct. 1188.
 
 Lyman Brownfield, Columbus, Ohio, for plaintiffs-appellants; Lyman Brownfield, Phillip K. Folk, Victor S. Krupman, Thomas Hackett, Springfield, Ohio, on brief; Brownfield, Kosydar, Folk & Yearling, Columbus, Ohio, of counsel.
 A. A. Sommer, Jr., Cleveland, Ohio, and Robert H. Hoffman, Columbus, Ohio, for defendants-appellees; Richard J. Cusick, Jr., Cleveland, Ohio, on brief for S. O. Nolte, Gilman D. Kirk and Todd Tibbals; Calfee, Halter, Calfee, Griwwold & Sommer, Cleveland, Ohio, of counsel; Bitner Browne, Martin, Browne, Hull & Harper, Springfield, Ohio, of counsel for S. O. Nolte; John L. Davies, Columbus, Ohio, of counsel for Gilman D. Kirk; Larry H. Snyder, Chamblin, Snyder & Henry, Columbus, Ohio, of counsel for Todd Tibbals; Katheleen K. Haase, Columbus, Ohio, on brief for Robert E. S. Young; Power, Griffith, Jones & Bell, Sidney D. Griffith, Andrew T. Jones, Columbus, Ohio, on brief for Jay W. Kent, Jr., Executor of the Estate of Jay W. Kent, Sr.
 Walter P. North, Associate General Counsel, Washington, D.C., for Security and Exchange Commission.
 Before WELCK, Chief Judge, and EDWARDS and COMBS, Circuit Judges.
 WEICK, Chief Judge.
 
 
 1
 The controversy here grew out of the merger of Certified Mortgage Corporation (Mortgage) into Certified Credit Corporation (Credit).
 
 
 2
 The principal issue in the case is whether the merger of the two Ohio corporations involved a sale of securities within the meaning of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 adopted by the Securities and Exchange Commission.[1] The District Judge held that it did not and further that the action could not be maintained for the benefit of the shareholders as a class. He granted defendants' motion to dismiss and for a summary judgment. We reverse.
 
 
 3
 Plaintiffs owned Class A and Class B shares of mortgage which they exchanged for shares in Credit pursuant to the plan of the merger. They instituted a suit in the District Court in behalf of themselves and all persons similarly situated, against the officers and directors in control of Mortgage, to recover the value of their shares of stock alleged to have been destroyed by the merger which they claim was accomplished by misrepresentations and concealment of material facts in proxy statements mailed by Mortgage to its shareholders. The suit was brought under the antifraud provisions of Section 10(b) and Rule 10b-5.
 
 
 4
 In granting the motion to dismiss and for summary judgment, the District Judge relied principally upon an amicus curiae brief filed by the Securities and Exchange Commission in 1943 in the case of National Supply Co. v. Leland Stanford Jr. Univ., 134 F.2d 689 (9th Cir. 1943), cert. denied, 320 U.S. 773, 64 S.Ct. 77, 88 L.Ed. 462 (1943), and the decision of the court that agreed with it without any comment. The thrust of the court's opinion in National Supply Co., however, was on another ground, namely, estoppel.
 
 
 5
 But the Commission, since 1951, has changed its position and is now of the view that a statutory merger or consolidation involves a sale of securities within the meaning of the antifraud provisions of the Act.
 
 
 6
 The Appellate Courts which have considered the question since have agreed with the present position of the Commission. Vine v. Beneficial Fin. Co., 374 F.2d 627 (2nd Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (short form merger); Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir. 1967), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (statutory merger). To the same effect is Simon v. New Haven Board & Carton Co., 250 F.Supp. 297 (D.C.Conn.1966) (statutory merger); Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369 (D.Del. 1965) (short form merger); H. L. Green Co. v. Childree, 185 F.Supp. 95 (S.D.N.Y.1960) (statutory merger).
 
 
 7
 The Act (15 U.S.C. 78c(a)(13) and (14) defines 'purchase' as including '* * * any contract to buy, purchase, or otherwise acquire,' and 'sale' as including '* * * any contract to sell or otherwise dispose of.'
 
 
 8
 In construing these definitions, Judge Schnackenberg, in Dasho, said:
 
 
 9
 'This broad language indicates an intention by Congress that the words 'purchase' and 'sale' are not limited to transactions ordinarily governed by the commercial law of sales. The purpose is evidently to make control of securities transactions reasonably complete and effective to accomplish the purposes of the legislation.
 
 
 10
 '* * * In the case at bar, when the merger was approved and the exchange of securities occurred, the owner of stock had in effect purchased a new security and paid for it by turning in his old one. In such a situation the antifraud protections afforded by the Securities Act are needed no less than in a situation where one makes an outright purchase of stock for cash. We agree with counsel for the amicus curiae that the complex nature of a merger enhances the opportunities for fraud and thus increases the need for antifraud protection.'
 
 
 11
 This broad reading of the word 'sale' finds support in S.E.C. v. W. J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946) where the Supreme Court in interpreting the term 'investment contract' stated that it would be construed according to
 
 
 12
 '* * * a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'
 
 
 13
 In S.E.C. v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963), the court said:
 
 
 14
 'A fundamental purpose (of the 1934 Act) was to substitute a philosophy of full disclosure for philosophy of caveat emptor and thus achieve a high standard of business ethics in the securities industry.'
 
 
 15
 The court further said that securities legislation aimed at avoiding fraud is to be construed
 
 
 16
 '* * * not technically and restrictively but flexibly to effectuate its remedial purposes.' See also Hooper v. Mountain States Sec. Corp., 282 F.2d 195 (5th Cir. 1960).
 
 
 17
 Ohio law required the merger to be approved by the directors of each corporation and by two-thirds of the shareholders. Dissenting shareholders are to be paid the fair cash value of their shares. OhioRev.Code 1701.78, -.79, -. 85.
 
 
 18
 The issuance by a corporation of its own stock has been held to make it a seller within the meaning of the antifraud provisions of the Act. Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964); Hooper v. Mountain States Sec. Corp., supra; Weitzen v. Kearns, 271 F.Supp. 616 (S.D.N.Y.1967); Globus, Inc. v. Jaroff, 266 F.Supp. 524 (S.D.N.Y.1967).
 
 
 19
 A serious gap in the law would exist if millions of shareholders involved in the many mergers or consolidations which are effected today, were left unprotected by the anti-fraud provisions of the Act. The legislative history does not require such a construction to be given of the Act, and we do not so construe its language.
 
 
 20
 We conclude that the exchange of stock in the merger constituted a sale within the meaning of the Act.
 
 Stock Subscriptions
 
 21
 The subscribers to stock in Mortgage who continued to make payments to Credit on their subscriptions after the merger, should be considered as stockholders entitled to the protection of the Act. Their holdings in Mortgage were involuntarily converted into shares of Credit by the merger. They should be entitled to the same protection as is afforded to shareholders involved in a short form merger. Vine v. Beneficial Fin. Co., supra. Cf. S.E.C. v. Associated Gas & Elec. Co., 24 F.Supp. 899 (D.C.N.Y.1938), aff'd 99 F.2d 795 (2d Cir. 1938); S.E.C. v. North Amer. Fin. Co., 214 F.Supp. 197 (D.Ariz. 1959).
 
 Class Suit
 
 22
 The District Judge originally ordered the case to proceed as a class suit, but in his order of dismissal he indicated that if the case had proceeded to trial he would have vacated that ruling. He was of the opinion that the persons comprising the class were so numerous as not to have had sufficient notice of the action, and further there was a probability that he would have held that each plaintiff must rely upon the alleged misrepresentations before there could be any recovery.
 
 
 23
 Appellants' brief indicates that there were about twelve hundred shareholders who were involved in an intrastate offering of the shares and they were all residents of Ohio. Their names and addresses are in the possession of counsel for plaintiff. There should be no difficulty in giving adequate notice if and when the District Court determines that notice should be given.
 
 
 24
 Class actions are governed by Rule 23, Fed.R.Civ.P. In our judgment, the allegations of the complaint are sufficient to bring the case within the provisions of Rules 23(a) and 23(b)(3).
 
 
 25
 This is not a case where some shareholders were treated differently. Proxy statements alleged to contain misrepresentations and material omissions were mailed to all shareholders. Questions of fact and law are therefore common to all of them. Using the language of the court in Vine, supra, it is a classic example of deception of an entire class, id. 374 F.2d at 635.
 
 
 26
 Appellees contend that not all of the shareholders may have relied on the misrepresentations. They suggest that some may have signed proxies without reading the proxy statements, while others may not even have signed them.
 
 
 27
 It seems to us that this is defensive matter hardly relevant to a motion to dismiss which admits the allegations of the complaint well pleaded. Vine, supra.
 
 
 28
 As well stated in Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964):
 
 
 29
 'Appellees assert that the various investors made payments on the securities at different times and stand in different positions with respect to the representations made to them and the reasonableness of their reliance, and therefore that questions of fact and law will arise which cannot be common to them all. Again, the argument is based upon factual premises which must be established in the trial court, not here. But even assuming these premises to be true, since the complaint alleges a common course of conduct over the entire period, directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial. Rule 23(a)(3) 'does not require that all the members of the class be identically situated, if there are substantial questions either of law or fact common to all.' 3 Moore's Federal Practice P23.10 at 3454 (2d ed. 1963).'
 
 
 30
 To the same effect: Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966); Voege v. American Sumatra Tobacco Corp., supra.
 
 
 31
 The complaint alleged that the defendants caused the merger to be effected by means of misleading, deceptive and manipulative devices and scheme in the particulars set forth therein. In Vine, which involved a short form merger, the court held reliance need not be shown where no volitional act is required. The court said, 374 F.2d at page 635:
 
 
 32
 'Since the complaint alleges that plaintiff, in effect, has been forced to divest himself of his stock and this is what defendants conspired to do, reliance by plaintiff on the claimed deception need not be shown. What must be shown is that there was deception which misled Class A stockholders and that this was in fact the cause of plaintiff's claimed injury. The allegations of this complaint meet that test.'
 
 
 33
 The District Judge relied on List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965), which held that the requirement that reliance be placed upon misrepresentation is carried over into civil suits under Rule 10b-5. The court was careful, however, to apply a different test to nondisclosure cases under Rule 10b-5. The court held that the following test should be applied in a nondisclosure case:
 
 
 34
 'The proper test is whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact. Speed v. Transamerica Corp., D.C. 99 F.Supp. 808, 829; Kardon v. National Gypsum Co., 73 F.Supp. 798, 800 (E.D.Pa.1947).'
 
 
 35
 List was not a class suit. It involved only one plaintiff.
 
 
 36
 In Speed v. Transamerica Corp., 99 F.Supp. 808 (D.Del.1951), aff'd 235 F.2d 369 (3rd Cir. 1956), recovery was allowed in shareholders' class suits involving nondisclosures. The case was tried on an amended complaint filed after the original complaint had been held insufficient, in Speed v. Transamerica Corp., D.C., 5 F.R.D. 56.
 
 
 37
 In Speed, District Judge Leahy, referring to Rule 10b-5, said at page 828:
 
 
 38
 'The rule is clear. It is unlawful for an insider, such as a majority stockholder, to purchase the stock of minority stockholders without disclosing material facts affecting the value of the stock, known to the majority stockholder by virtue of his inside position but not known to the selling minority stockholders, which information would have affected the judgment of the sellers. The duty of disclosure stems from the necessity of preventing a corporate insider from utilizing his position to take unfair advantage of the uninformed minority stockholders. It is an attempt to provide some degree of equalization of bargaining position in order that the minority may exercise an informed judgment in any such transaction. Some courts have called this a fiduciary duty while others state it is a duty imposed by the 'special circumstances'.'In Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967), cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), the court quoted from 3 Loss Securities Regulations, 1765 (2d ed. 1961) to the effect that in cases of nondisclosure, if reliance is a prerequisite to the rule, it is 'little more than a formal requirement.' The court approved the List test. Myzel involved four shareholders of a closed corporation who were induced by fraudulent representations and concealment to sell their shares.
 
 
 39
 In Voege v. American Sumatra Tobacco Corp., supra, the court said that reliance could be inferred. It held (241 F.Supp. page 375):
 
 
 40
 'Finally, defendants say that plaintiff's action must be dismissed because there is no allegation that she relied on the manipulative or deceptive devices alleged, as List v. Fashion Park, 340 F.2d 457 (2nd Cir. 1965), is said to require. It may be fairly inferred, however, that when plaintiff purchased her shares she did rely upon the honesty and fair dealing of New Company and those who controlled it. Every contract contains the implied condition that the parties to it will act in good faith and deal fairly with each other in its performance. 17 Am.Jur.2d Contracts 256, p. 653. Plaintiff necessarily relied upon this all-important condition when, by acquiring her shares, she agreed with Old Company and its stockholders that Old Company could be merged upon terms later to determined.'
 
 
 41
 In order to recover, plaintiffs must prove a violation of Rule 10b-5 and that they were damaged as a result thereof.
 
 
 42
 Some of the appellees contend that they were not directors or in control of Mortgage. These are issues of liability which were not passed upon by the District Judge and we decline to rule upon them. The liability of defendants will necessarily have to be determined at the trial where the plaintiffs will be required to support by evidence the allegations of their complaint.
 
 
 43
 Reversed and remanded.
 
 
 
 [1]
 Section 10(b), 15 U.S.C.A. Section 78j provides:
 'It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 '(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.'
 Rule 10b-5, adopted by the Commission (17 C.F.R. 240.10b-5), provides:
 'It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange
 '(a) to employ any device, scheme or artifice to defraud,
 '(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 '(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,
 'in connection with the purchase or sale of any security.'