Sally BASCH et al., Plaintiffs,

v.

TALLEY INDUSTRIES, INC., et al., Defendants.

No. 70 Civ. 4144.

United States District Court, S. D. New York.

Sept. 1, 1971.

Austrian, Lance & Stewart, Cowan, Liebowitz & Lattman, New York City, for plaintiffs; Alan Lattman, William Klein II, Barry D. Shalov, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendant Talley Industries, Inc.

Rogers, Hoge & Hills, New York City, for defendants American Investors Fund, Inc. and George A. Chestnutt, Jr.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendants Braman B. Adams II, Donald D. Harrington, John C. Robinson, John W. Stodder, William C. Speed and Peat Marwick Mitchell & Co., Wesley A. Stanget, Jr., John D. MacNaughton, Jr.

Simpson, Thacher & Bartlett, New York City, for defendants William Osborn and Lehman Brothers; James J. Hagan, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants Smith, Barney & Co., Charles J. Kinard and Thomas Murtagh.

Kissam & Halpin, New York City, for defendants Joseph A. Disesa, Thomas F. Reddy, Jr. and Oscar Kimelman.

Mudge, Rose, Guthrie & Alexander, New York City, for defendants Franz G. Talley, Arthur E. Ehlenberger and Ger-

ald E. Hirt; Gerard A. Dupuis, John P. Hederman, New York City, of counsel.

Patterson, Belknap & Webb, New York City, for defendant M. Kimelman & Co.

GURFEIN, District Judge.

## OPINION

This is a motion by plaintiffs for an order pursuant to Rule 23(c) (1) of the Federal Rules of Civil Procedure (1) determining that the first, second, fourth and fifth claims in the amended complaint can be maintained as a class action and (2) providing for the requisite notice at the expense of defendant Talley Industries, Inc. (Industries). The background of this action and the essence of the amended complaint herein were stated by Judge Metzner in denying a motion to dismiss the above mentioned claims.[1] Judge Metzner summarized the complaint as follows:

"This suit arises out of the merger of General Time Corporation (GTC) into Talley Industries, Inc. (Industries). The plaintiffs were shareholders of GTC common stock at the time of the activities complained of, and they sue on their own behalf, derivatively on behalf of GTC, and as representatives of various classes of GTC stockholders. The action is based on the federal securities laws as well as on the common law, and the relief sought is damages and rescission of the merger. The defendants are GTC, Industries, directors of these corporations, and numerous others involved in the merger negotiations.

"There follows a summary of the detailed allegations of the complaint. Until the time of the merger GTC was a Delaware corporation engaged in the manufacture and sale of clocks and watches, with stock traded on the New York Stock Exchange. Industries is a conglomerate, incorporated under the laws of Delaware. Its stock has been traded on the New York Stock Exchange

since October 1, 1968, and before that was traded on the American Exchange.

"In December 1967, Industries began purchasing shares of GTC stock with a view toward merging the two companies. At the GTC stockholders' meeting on April 22, 1968, a slate of Industries nominees swept every position on the GTC board of directors.

"The Industries slate took office on January 13, 1969, and by February 12, 1969, a merger plan had been approved by the boards of directors of both corporations. The plan provided for an optional exchange of one share of GTC common stock for either one share of Industries common stock or one share of Industries Preferred convertible into one share of Industries common. It received SEC approval on February 10, 1970.

"A meeting of GTC stockholders of record as of April 13, 1970, was called for May 14, 1970, to vote on the merger. Prior to the meeting these stockholders received management's proxy statement and a form soliciting proxies for approval of the merger. The merger was approved and shortly thereafter GTC was merged into Industries.

"The plaintiffs charge that from the time Industries first started to buy GTC stock in December of 1967, Industries was engaged in a scheme to arrange a merger which would be inequitable to GTC and its shareholders. There were two main parts to this scheme. The first involved manipulation of the price of GTC stock downward and Industries stock upward so that GTC shareholders would receive less than fair value when they exchanged their stock for Industries stock. Plaintiffs claim that this manipulation began shortly after the Industries slate was elected to the GTC board of directors and continued until the time of the merger.

"The second part of the scheme involved the management proxy material

1. Basch v. Talley Industries, Inc., 53 F.R.D. 9 (1971).

which the plaintiffs claim contained numerous false and misleading statements. Plaintiffs charge that the proxy statement overstated Industries' earnings before taxes, net earnings, earnings per share, and stockholders' equity for the nine months ending December 31, 1969, and that the statement failed to disclose decreases in cash flow and working capital that occurred in fiscal 1970."

When we discuss the classes sought to be represented, we shall supply more detail below.

The plaintiffs claim to represent two classes—the "Proxy Fraud Class" which includes all GTC shareholders as of April 13, 1970 (the merger meeting record date) who were entitled to receive the proxy material for the May 14 stockholders meeting; and the "Stock Fraud Class" which includes all persons who purchased or sold GTC common stock between the time Industries first bought GTC stock on December 27, 1967 and the date of the merger in 1970 (shortly after the merger meeting on May 14).

The first claim in the complaint charges that the Merger Proxy Statement was materially false and misleading. It is brought on behalf of the Proxy Fraud Class alone. The violations asserted are of Sections 10(b), 14(a), 20(c) and 29(b) of the Securities Exchange Act of 1934 and Rules 10b–5 and 14a–9 promulgated thereunder and Sections 11, 12(a), 15 and 17(a) of the Securities Act of 1933. The fifth claim is similar; it alleges common law fraudulent breach of fiduciary duty by all of the defendants and is based on pendent jurisdiction.

The second claim is brought on behalf of both the Proxy Fraud and the Stock Fraud Classes. It alleges a general scheme under which, commencing in December 1967, Industries in concert with other defendants, purchased or controlled about 35% of GTC common stock and created a GTC stockholders' committee to solicit proxies for the GTC 1968 annual meeting, announcing the day before the meeting that, if elected, its nominees would merge GTC into Industries on the basis of one share of GTC common stock for one share of Industries preferred stock convertible into the equivalent of $1\frac{1}{3}$ shares of Industries common stock (the "$1\frac{1}{3}$ Proposal"). Industries' slate were all elected and took office on January 13, 1969. It is charged that, thereupon, Industries embarked upon a scheme, aided and abetted by each of the defendants, to manipulate the respective stock prices of GTC and Industries by depreciating the business and prospects of GTC, thus depressing its market price, while overstating the business and prospects of Industries, thus artificially inflating the market price of Industries stock on national exchanges and thereby enabling Industries to merge GTC into itself at a price below GTC's fair value. It is charged that Industries withdrew the $1\frac{1}{3}$ Proposal and in order to inflate the price of Industries stock falsely attributed great value to new products, such information permitting brokers to "tout" Industries stock in excess of its true value. It is claimed that Lehman Brothers (and its partner, Osborn), financial advisers to GTC, and Smith, Barney (and its partners, Kinard and Murtagh), financial advisers to Industries, jointly aided and abetted the scheme. The accounting firm of Peat Marwick Mitchell & Co. is similarly charged, as is Kimelman & Co. (and a partner), the finder in the merger. The violations charged are of Sections 9(a), 10(b) and 14(a) of the 1934 Act and Rules 10b–5 and 14a–9 thereunder, and Sections 12(2) and 17(a) of the 1933 Act. The fourth claim is similar, alleges common law fraud and is based on pendent jurisdiction.

The questions on this motion are: (1) is a class action proper? (2) if so, can the plaintiffs adequately represent both classes? (3) is a firm of lawyers representing the plaintiffs (and certain of the plaintiffs) disqualified for conflict

of interest? (4) is the class action determination premature and should discovery as to the proper class precede such determination? and (5) if a class action is defined, what notice shall be given and who shall pay for it?

### THE PROXY FRAUD CLASS

 The Proxy Fraud Class has all the elements of a class suitable for the application of Rule 23 F.R.Civ.P. It has the following characteristics: (1) the class is so numerous that joinder of all members is impracticable. The number of GTC shareholders who were required to exchange their shares for Industries shares in the merger were more than 5,000. They are identifiable from records in the possession of defendant Industries and from brokerage records where shares were held in street name.

(2) There are questions of law or fact common to the class. The legal and factual issue will turn upon the alleged misrepresentations and omissions in the specific proxy statement used for solicitation of proxies for the merger meeting. Since this is a single document applicable to all GTC shareholders it is clear that the questions of law and fact are common to the entire class and the plaintiffs, as recipients of the proxy statement, have claims typical of the class.

 (3) We reserve the question of whether representative parties will fairly and adequately protect the interests of the class for later discussion. There is generally no conflict of interest among the shareholders who exchanged their stock under the merger plan which resulted from an alleged false and misleading proxy statement. All are similarly situated. The measure of damages would presumably be the same for all who received Industries stock for their GTC stock. Indeed, upon oral argument counsel for Industries conceded that the Proxy Fraud Class was a proper class under Rule 23. Normally claims based on a false and misleading proxy statement or prospectus in violation of Sections 10 and 14 and Rules 10b-5 and 14a-9 of the 1934 Act are classic cases for Rule 23 treatment. Green v. Wolf Corporation, 406 F.2d 291 (2 Cir. 1968), cert. den. 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).; Cohen v. Franchard Corporation, 51 F.R.D. 167 (S.D. N.Y.1970); Mader v. Armel, 402 F.2d 158 (6 Cir. 1968), cert. den. sub nom, Young v. Mader, 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969). Although the defendants claim that discovery is necessary to determine whether the plaintiffs voted for or against the merger or did not vote at all, that type of discovery would not be useful for a determination of this motion. It does not matter how the particular plaintiffs voted. What matters is that deception practiced on other GTC shareholders to induce them to vote for the merger would be sufficient to create liability. See Mills v. Electric Auto Lite Co., 396 U.S. 375 (1970); Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2 Cir. 1967); see Mader v. Armel, *supra,* 402 F.2d at page 162. Nor is there any conflict on the question of whether some shareholders might desire rescission while others might prefer damages. Cf. Guttmann v. Braemer, 51 F.R.D. 537 (S.D.N.Y.1970) (appeal pending). As Judge Metzner pointed out, rescission "is totally impractical in this case." 53 F.R.D. at p. 12. Without foreclosing the matter it would appear at this stage of the proceeding that rescission is so remote as not to be a factor in the class determination. Accordingly, we hold that the Proxy Fraud Class is a proper class for the prosecution of this action, subject to our discussion of the adequacy of representation below.

### THE STOCK FRAUD CLASS

 The plaintiffs also seek to represent persons whom they apparently treat as a separate class—the persons who purchased or sold GTC stock from December 27, 1967 when Industries itself first began to purchase GTC stock

until the merger was consummated in May 1970. The complaint itself does not go so far, but charges the manipulative aspects of the scheme to have been started after January 13, 1969 when the Industries' nominees actually became directors of GTC. The plaintiffs contend that the scheme was a single integrated conspiracy culminating in the false proxy statement and merger and that hence all who were hurt along the way should be represented by these plaintiffs. The difficulty is that none of the fourteen plaintiffs in this action was himself hurt along the way. Although some of the plaintiffs bought their GTC stock during the period alleged, they were not damaged by their purchases at artificially depressed prices as alleged in the complaint. At that point they were beneficiaries of the alleged fraud and as such have no standing to sue. See Hoover v. Allen, 241 F.Supp. 213, 227 (S.D.N.Y.1965). In any event they are adequately protected in seeking their damages for the alleged proxy fraud. Even if there was earlier manipulation it did not affect these plaintiffs who failed to sell but held their shares until the merger when they exchanged them for Industries shares. The situation is reminiscent of Vine v. Beneficial Finance, *supra*, 374 F.2d at page 637. In *Vine* the involuntary seller in addition to claiming that he was a "seller" for 10b–5 purposes, also sought to amend his claim to charge that material facts were concealed from him when he originally bought his stock some years before. Judge Bonsal refused to permit the amendment. In affirming, our Court of Appeals pointed out that "the second amended complaint does not allege how this concealment harmed him financially, apart from laying the groundwork for the alleged fraud in merging Crown with Beneficial" (p. 637). So here the fourteen plaintiffs cannot show that they themselves were harmed financially by the pre-merger manipulative practices for they did not sell their shares. To the extent that they were harmed as technical "sellers" because of the merger that is merely a restatement of the claim they make on behalf of the Proxy Fraud Class. Since none of the named plaintiffs could recover as a member of the Stock Fraud Class alone none can be the representative of such Class. See 3B Moore, Federal Practice ¶ 23.04 (2d Ed. 1969); Bluestein v. Friedman, CCH Fed.Sec.L.Rep. ¶ 92,558 at 98,544 (S.D. N.Y.1970); see also Wittner v. Ghen, CCH Fed.Sec.L.Rep. ¶ 91,623 (S.D.N.Y. 1966); Wechsler v. Tenny Corp., CCH Fed.Sec.L.Rep. ¶ 92,923 (S.D.N.Y.1971); Greenstein v. Paul, 275 F.Supp. 604 (S. D.N.Y.1967), affd., 400 F.2d 580 (2 Cir. 1968).

We note further, however, that in the exhibits submitted at least one and possibly two persons who voluntarily sought representation by plaintiffs' counsel apparently are persons who would be members of the Stock Fraud Class. If such a person should voluntarily seek to join as plaintiff, this opinion should not be construed as foreclosing him. The Court would then have to determine whether in view of the allegation of a continuing conspiracy at least since January 13, 1969 a common representation of the two classes together would be compatible with the interests of each and whether there are substantial questions of law and fact common to both classes (Rule 23(a) (2)).

In view of the possibility that such a second class may be formed, we will not order the sending of notices at this stage of the litigation. If, after thirty days from the filing of this opinion, a plaintiff in the Stock Fraud Class does not appear the Court will entertain an application for the sending of notices to the members of the Proxy Fraud Class alone. If a proper plaintiff appears as a member of the Stock Fraud Class, the Court will entertain a motion to create such class, a question not reached at this time. Of course, if such a motion should be granted the notice to

be sent would encompass a great many more persons. To save the expense of the mailing of two notices, we will, therefore, as a practical matter hold the giving of notice in abeyance.

## REPRESENTATION OF THE CLASS BY COUNSEL AND CERTAIN PLAINTIFFS

The defendants contend that one of the two law firms representing the plaintiffs, Austrian, Lance & Stewart (Austrian) should not be permitted to act for the Class because of a potential conflict of interest. The contention is based on the circumstance that Austrian represented GTC shareholders in the 17 (b) proceeding under the Investment Company Act before the Securities and Exchange Commission to determine the fairness of the original proposal made to GTC shareholders by Industries. Austrian is claiming in an action in this Court that it was successful in that proceeding in bettering the merger terms and, accordingly, asks for a "fair and equitable percentage of the benefit produced" for the GTC shareholders (Compl. 70 Civ. 675; Ex. B to Stratton Affd.). That action is also on behalf of certain persons who are also plaintiffs in this action. They also seek compensation for their services.[2] Austrian initially sought to impress a lien on the shares of Industries to be distributed to GTC shareholders upon the merger. Apparently in order to avoid the delay inherent in the determination of the lien claim Industries itself agreed to pay any fees (up to $1,000,000) which the Court might determine the GTC shareholders would have owed to Austrian and the other plaintiffs in that action, and the claim for a lien (third cause of action) was withdrawn.

The defendants argue that the position of Austrian in its prosecution of its claim for fees is in conflict with its undivided duty to the plaintiffs in this action. Why this should concern the adversary party is not clear but we appreciate it being raised for Court determination.

The recovery in the fee case would be measured by a percentage of the benefits conferred. To the extent that Austrian enhances the value of what was already received on the merger it gets a larger fee. But the basis of damages in this proxy fraud action would be the spread between what the former shareholders received on the merger and what they should have received absent the fraud. Thus it would be to the advantage of Austrian and the other plaintiffs in the fee action to establish the highest possible value for what was actually received while, on the contrary, it would be to the advantage of the Proxy Fraud Class to establish the lowest possible value in order to maximize their damages. With respect to the measure of damages Austrian appears to be in a conflict of interest.[3] With respect to liability, however, there is no consideration that would cause Austrian to be less aggressive on behalf of the Class, except for the possibility of a collusive settlement of the fee action. At the request of the Court at a conference of counsel Austrian has agreed to stipulate that it will not settle the fee action before the determination of this action. The other circumstance of importance here

---

2. The plaintiffs in the fee case who are also plaintiffs in this case are: Sally Basch, Samuel Brook, Mollie Eigen, Benjamin Hoffseyer, Elizabeth McKeever and Hilda Popkin.

3. It is not clear that the Austrian firm's arguments against the existence of a conflict—(1) that the benefit of an increased conversion rate, etc. must be given a value apart from the value of the security itself and (2) that the benefit should be computed on *pre-fraud* rather than actual values for Industries stock will necessarily prevail. The Court in no way intimates its opinion of the proper measure of damages in the fee case; that remains for the trial Judge in that case.

is that Austrian has co-counsel, Cowan, Liebowitz & Lattman, who are not involved in the fee case.

Because of their familiarity with the history involved it would be a disservice to the class of plaintiffs to dispense entirely with the services of Austrian. The Court assumes, without prejudice to a contrary determination by the trial Judge, that the issue of liability can be tried first and the issue of damages thereafter. Since punitive damages are asked the same jury may be used so that it will be familiar with the grounds of liability, if any.

The Court will, therefore, appoint Cowan, Liebowitz & Lattman as lead counsel, permitting Austrian to remain as co-counsel because of their important background in the matter. The Cowan firm will bear the entire responsibility for the damage portion of the case to avoid even the possibility of an irreconcilable conflict of interest with respect to the Proxy Fraud Class.

The plaintiffs in this action (who are listed in footnote 2, *supra*) are also plaintiffs in the fee action in which they have assigned their claims to Austrian for the purpose of the stipulation providing for a release of Austrian's lien referred to above. Since there are other plaintiffs in this action who are not in the fee action and who are apparently capable of representing the entire Proxy Fraud Class the fee action plaintiffs will not be permitted to represent the Class. They may, of course, remain members of the Proxy Fraud Class or, if so disposed, sue on their own behalf in separate actions.

The Court will await a report on the *Stock Fraud Class* from plaintiffs' counsel as indicated in this opinion before any further determination is made as to that Class. In the meantime general discovery on the merits with reference to the Proxy Fraud Class shall proceed.

Settle Order On Notice.